**CUDAHY PACKING CO. v. UNITED STATES. SWIFT & CO. v. SAME. WILSON & CO. v. SAME.**

(Circuit Court of Appeals, Seventh Circuit. October 27, 1926.)

Nos. 3653–3655.

**1. Courts ⊂⇒265.**

Jurisdiction of federal courts to entertain original actions for mandamus may be conferred only by statute clearly granting it.

**2. Courts ⊂⇒265—District court held to have jurisdiction of mandamus to compel compliance with demand of secretary of agriculture for access to records of packers (Packers and Stockyards Act 1921, § 402, and Federal Trade Commission Act, § 9 [Comp. St. §§ 8716¼t, 8836i]).**

Under Packers and Stockyards Act 1921, § 402 (Comp. St. § 8716¼t), making applicable Federal Trade Commission Act, § 9 (Comp. St. § 8836i), district court had jurisdiction of mandamus to compel compliance with demand of Secretary of Agriculture for access to records of packers in order to carry out provisions of act.

**3. Searches and seizures ⊂⇒7.**

Demand of Secretary of Agriculture under Packers and Stockyards Act 1921, § 402 (Comp.

St. § 8716¼t), for access and right to copy books of accounts and records of packing companies, *held* unreasonable, and in violation of Fourth Amendment.

**4. Words and phrases.**

Generally, words "documents" and "papers" refer to particular instruments and writings bearing upon specific transactions, whereas "books of accounts" and "records" have reference to serial, continuous, and more permanent memorials of concern's business and affairs.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Book of Account; Document; Papers; Record.]

**5. United States ⊂⇒33.**

Secretary of Agriculture *held* not empowered under Packers and Stockyards Act 1921, § 401 (Comp. St. § 8716¼s), authorizing him to prescribe proper keeping of accounts by packers, to examine and copy books and records in advance of any complaint or charge of impropriety.

**6. Constitutional law ⊂⇒296(1).**

Extent to which regulation of business impressed with public interest may reasonably go varies with different kinds of business.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Separate proceedings in mandamus by the United States, by the Attorney General, against the Cudahy Packing Company, against Swift & Co., and against Wilson & Co. Judgments for the United States and defendants bring error, causes being consolidated for hearing. Reversed and remanded with directions, in each case.

Asserting authority under section 9 of the Federal Trade Commission Act (Comp. St. 8836i), which is one of the sections incorporated by reference into the Packers and Stockyards Act 1921 (Comp. St. §§ 8716¼–8716¼z), the Secretary of Agriculture demanded that his auditor and agents be given access to, and right to copy, the books of accounts, records, memoranda, and documentary evidence in possession of plaintiffs in error (whom we call packers), relating to any business referred to in section 201 of title 2 of the Packers and Stockyards Act (Comp. St. § 8716¼aa), to provide information for the use of Congress, and in order to enable the Secretary to carry out the provisions of last-named act, and to aid him in making investigation and inquiry necessary to his duties under said act. The packers refused to comply with the demand, whereupon, on the request of the Secretary, the Attorney General, on behalf of the United States, instituted in the district court manda-

mus proceedings against the several plaintiffs in error to compel compliance with the demand.

The petition alleged plaintiffs in error to be "packers," as defined in title 2 of the Act (Comp. St. §§ 8716¼aa–8716¼cc), and that they are also "dealers" as defined in title 3 thereof (Comp. St. §§ 8716¼d–8716¼r). It alleges further, that under enumerated sections of the Packers and Stockyards Act and of the Federal Trade Commission Act it was the duty of the Secretary to obtain access to, and examine, all accounts, records, and memoranda of the packers for the purposes set forth in a prior written notice to the packers which was attached to the petition as an exhibit.

The several answers of the packers admit they are packers within the meaning of the act, but deny they or their employees are "dealers," as defined in title 3 of the act, or that they were in the business of buying and selling in commerce live stock as in the act defined.

With much detail the answers set out the nature of the packers' business, alleging it to comprise three separate and distinct classes of business, viz.: (1) Buying live stock for slaughter in production of meats and meat food products, and buying other articles and commodities for use in the business of manufacturing other than meat and live stock products; (2) slaughtering the live stock, packing meats, and manufacturing many classes of meat food products and live stock products, and commodities other than meat products, and storing such products; and (3) marketing meats and such other products.

The answers challenge the right of petitioner to examine and copy the books, records, and documents as demanded, and particularly assert that their manufacturing in nowise involves interstate commerce, and that the demand for inspection of books and records of their manufacturing departments is unreasonable, and violative of the Fourth and Fifth Amendments to the Constitution.

The government moved for judgment on the ground of the insufficiency of the answers, whereupon the packers asked the court to carry the motion back to the petitions upon the ground that they were insufficient, and that the court had no jurisdiction to entertain them. The court carried back the motion, and, holding the petitions sufficient, and that it had jurisdiction, and that the answers did not state a defense to the petitions gave judgments against plaintiffs in error. The causes are here consolidated for hearing.

James G. Condon, of Chicago, Ill., for plaintiffs in error.

H. B. Teegarden, Special Asst. Atty. Gen., for the United States.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). For the packers it is urged: That the district court was without jurisdiction; that to compel compliance with the demand would be violative of the Fourth and Fifth Amendments to the Constitution; that manufacturing is not interstate commerce; that in no event has the Secretary any jurisdiction over the manufacturing part of packers' business, or of books and accounts and other papers relating thereto.

[1, 2] Jurisdiction of federal courts to entertain original actions for mandamus may be conferred only by statute clearly granting it. Section 402 of the Packers and Stockyards Act 1921 (Comp. St. § 8716¼t) provides:

"For the efficient execution of the provisions of this act, and in order to provide information for the use of Congress, the provisions (including penalties) of sections 6, 8, 9, and 10 of the act entitled 'An act to create a federal trade commission, to define its powers and duties, and for other purposes,' approved September 26, 1914, are made applicable to the jurisdiction, powers, and duties of the Secretary in enforcing the provisions of this act and to any person subject to the provisions of this act, whether or not a corporation. The secretary, in person or by such agents as he may designate, may prosecute any inquiry necessary to his duties under this act in any part of the United States."

Section 9 of the Federal Trade Commission Act (Comp. St. § 8836i) provides:

"That for the purposes of this act the Commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against. * * *

"Upon the application of the Attorney General of the United States, at the request of the Commission, the District Courts of the United States shall have jurisdiction to issue writs of mandamus commanding any person or corporation to comply with the provisions of this act or any order of the Commission made in pursuance thereof."

It is contended for the packers that sec-

tion 402, in providing that section 9 of the Federal Trade Commission Act is made "applicable to the jurisdiction, powers and duties of the Secretary in enforcing the provisions of this act," dealt only with the jurisdiction, powers and duties of the Secretary, and not with the jurisdiction of the court; that section 9 specifically gave to the District Courts jurisdiction in mandamus in cases arising under the Federal Trade Commission Act, but that section 402 did not invest the District Courts with like authority, and that such cannot be derived through the incorporation of section 9.

The reasoning is much strained, and a consideration of both acts, and particularly these sections, makes it apparent to us that the procedure by the Secretary to enforce the Packers and Stockyards Act may be the same as with the Federal Trade Commission in the enforcement of that act. While it is not in section 402 specifically stated that the Secretary might proceed in the District Court, the plain intent of the incorporation of section 9 was to empower the Secretary to do all which by that section the Commission was empowered to do, one of which powers there distinctly given the Commission being to require the Attorney General to commence suit in mandamus in the proper district court.

It is true section 9 specifically states that the district court shall have jurisdiction, but we apprehend that had the section provided that the Commission was empowered to proceed in the District Court by mandamus that of itself would have been sufficient to authorize the District Court to entertain such a suit without again stating that the court was given jurisdiction. Section 9 surely empowered the Commission to cause a mandamus suit to be instituted in the district court; and, when section 402 conferred upon the Secretary all the jurisdiction and powers of the Commission under section 9 of the Trade Commission Act it conferred upon the Secretary the power to cause action in mandamus to be instituted in the district court to all intents and purposes as though it had been additionally stated that he was so empowered. Being thus distinctly invested with power to cause mandamus suits to be instituted in the District Court for the carrying out of the purposes of the Packers and Stockyards Act the District Court is thus empowered to entertain the action which the Secretary was thus distinctly authorized to bring there.

The case of Knapp v. L. S. & M. S. Ry. Co., 197 U. S. 536, 25 S. Ct. 538, 49 L. Ed.

870, cited for packers as sustaining their position, does not seem to be in point. The opinion there is predicated on the assumption that nowhere in the Interstate Commerce Act was there given any right by mandamus to compel the railroad to make the there demanded reports, notwithstanding that elsewhere in the act jurisdiction was conferred for so requiring railroads to do specific things other than the making of the reports there in question. Indeed, that case, so far as it has applicability here, would seem rather contrary to the contention for the packers. Although the question there was not directly in issue, the opinion seems to recognize the jurisdiction of the federal court to grant writs of mandamus for the particular purposes described by section 6 of the Interstate Commerce Act of 1887 as amended in 1889 (25 Stat. 855, § 1). Section 6, however, did not make direct grant to the court of jurisdiction in mandamus, but provided:

"If any such * * * carrier shall neglect or refuse to file or" to make public its "tariffs of rates, fares, and charges as provided in this section, or any part of the same, such * * * carrier shall, in addition to other penalties herein prescribed, be subject to a writ of mandamus, to be issued by any circuit court of the United States * * * to compel compliance * * * and such writ shall issue in the name of the people of the United States, at the relation of the commissioners. * * * *"

Want of jurisdiction of the court might as well there have been contended on the ground that the act, while providing the carrier shall be subject to the writ at the relation of the Commission, did not specifically grant the court jurisdiction thereof. We are of opinion that said sections 402 and 9 sufficiently invested the court with jurisdiction.

[3, 4] Whether in any case section 9 as so incorporated would justify that very inclusive and important part of the Secretary's demand comprised in the words "books of accounts, records," is at best questionable. Section 9 provides for "access to, for purposes of examination, and the right to copy any documentary evidence of any corporation being investigated and proceeded against," and section 4 of the same Act (Comp. St. § 8836d), defines "documentary evidence" to mean "all documents, papers and correspondence in existence at and after the passage of this act." We are unable to conclude that the words "documents, papers and correspondence" are so inclusive as to comprise the books of accounts and records

of a concern. Generally speaking, the words "documents" and "papers" refer to particular instruments and writings bearing upon specific transactions, as deeds, contracts, plans, specifications, instruments, and writings generally of that nature, whereas "books of accounts" and "records" have reference to serial, continuous, and more permanent memorials of a concern's business and affairs, chronologically and systematically kept and arranged. That no uncertainty or confusion is permissible in the employment of such terms under similar circumstances is amply illustrated by the case of United States v. L. & N. R. R. Co., 236 U. S. 318, 35 S. Ct. 363, 59 L. Ed. 598. That was a mandamus proceeding to compel the railroad company to submit for examination by the Interstate Commerce Commission its accounts, records, memoranda, and correspondence. There the statutory right of inspection extended to accounts, records, and memoranda, but did not specifically include correspondence. The court held that this did not confer statutory right to demand submission to inspection of correspondence, and it sustained the action of the District Court dismissing petition for mandamus.

[5] It is contended for the government that the statutory authority to examine on demand books of accounts and records is to be gathered from section 401 of the Packers and Stockyards Act (Comp. St. § 8716¼s), which requires to be kept such accounts, records, and memoranda as fully and correctly disclose all transactions involved in the business, and that whenever the Secretary finds that such accounts, records, and memoranda do not fully and correctly so disclose, the Secretary may prescribe the manner and form in which they shall be kept, highly penalizing any failure thereafter so to keep them. But it will be noted that the right of the Secretary to prescribe the manner of keeping the accounts and records is predicated upon a finding of the previous failure so to keep them. If as kept they properly and sufficiently show the things required to appear, the Secretary is not authorized to install or require a system of his own. While undoubtedly there is in this respect much discretion lodged with the Secretary, still he has no right arbitrarily or capriciously to require the change to be made, and before the same is ordered the party affected would have right to be heard.

It does not here appear that the accounts and records of the packers failed in any degree to comply with the statute. There is no allegation of the slightest impropriety in this regard, and there was pending no complaint or proceeding by the secretary looking toward the change therein as provided in the statute. Indeed, the entire demand is in no degree predicated upon alleged dereliction in any duty or requirement which the statute lays upon the packers, save only the refusal to comply with the demand for inspection and copying. But, says the government, it is evident that without previous inspection it would not be known whether the accounts, etc., were such as are required to be kept, or would justify the Secretary in requiring installment of his own system. Legislative intent to permit unlimited inspection of books, records, papers, etc., to learn if there may be cause to believe that a highly penal statute has been transgressed will not lightly be presumed; and from the fact alone that section 401 requires the proper keeping of accounts, records, etc., and in case of failure to do so authorizes the Secretary to prescribe and require to be installed his own system, it does not follow that the Secretary was empowered, in advance of any complaint or charge of impropriety or violation, to examine and copy all books, records, papers, etc.

[6] But, assuming that books of accounts and records fall within the statutory authorization of the Secretary's inspection, we meet the question of his right, as against the Fourth Amendment to the Constitution, to maintain such all-inclusive demands. The demands here are so broad that to comply with them would subject to inspection all of the packers' books, records, accounts, memoranda, documents, and correspondence, in any and all their departments, and activities—as merchants, traders, manufacturers and otherwise—trade secrets, confidential communications, etc. That in proceedings under the Federal Trade Commission Act such broad and general demands contravene the Fourth Amendment to the Constitution is sufficiently manifest from what the federal courts have said upon that subject. Fed. Trade Com. v. Baltimore Grain Co., 267 U. S. 586, 45 S. Ct. 461, 69 L. Ed. 800, s. c. (D. C.) 284 F. 886; Fed. Trade Com. v. Amer. Tobacco Co., 264 U. S. 298, 44 S. Ct. 336, 68 L. Ed. 696, 32 A. L. R. 786; United States v. Basic Products Co. (D. C.) 260 F. 472. While not disputing this, the Government contends that such holdings are not here applicable, because the Packers and Stockyards Act in effect declares the business of the packers to be charged with a public interest, and that any such business may be regulated and controlled in the same manner and to the same extent as common carriers of interstate com-

merce. It may be conceded that the packing business is impressed with a public interest, but, as was said in Wolff Packing Co. v. Court of Industrial Relations, 262 U. S. 522, 43 S. Ct. 630, 67 L. Ed. 1103, 27 A. L. R. 1280:

"To say that a business is clothed with a public interest is not to determine what regulation may be permissible in view of the private rights of the owner. * * * To say that a business is clothed with a public interest is not to import that the public may take over its entire management and run it at the expense of the owner. The extent to which regulation may reasonably go varies with different kinds of business."

In Stafford v. Wallace, 258 U. S. 495, 42 S. Ct. 397, 66 L. Ed. 735, 23 A. L. R. 229, the act was held constitutional. The court held that stockyards, as well as the Commission men and traders there, who brought that action, were within the regulatory power of Congress. Hill v. Wallace, 259 U. S. 44, 49, 42 S. Ct. 453, 66 L. Ed. 822. The act respecting stockyards is quite similar in scope to the Interstate Commerce Act (Comp. St. § 8563 et seq.) respecting carriers. Sections 304 to 316 (Comp. St. §§ 8716¼g–8716¼r) make provisions requiring the stockyards to furnish service at reasonable rates, and to publish schedules of rates and charges; for suspension of schedules by the Secretary; and for the fixing by him of reasonable rates and charges—substantially as in the case of interstate carriers.

Respecting the packers there are no such provisions. There is no requirement for filing price schedules or authority in the Secretary to fix prices. The prescribed requirements, inhibitions, and restrictions are intended to bring about and maintain fair trade practices very much as with corporations generally wherewith the Federal Trade Commission is empowered to deal.

If the degree of impressment with public interest is primarily manifested by statutory pronouncement thereof, surely there is a wide margin between the situation of the packers and that of the stockyards. In this regard we can perceive no very decided difference in principle between the Packers and Stockyards Act as applied to the packers and the Federal Trade Commission Act as applied to the corporations falling within its purview.

We cannot see wherefore the unlimited inspection of books, records, memoranda, and correspondence without process of law in some pending proceeding, respecting every detail and relation of an interstate business,

is any the less unreasonable in the case of the packers under the Packers and Stockyards Act than in the case of corporations generally subject to the jurisdiction of the Federal Trade Commission, and we perceive no reason wherefore the cited authorities respecting cases arising under the Federal Trade Commission Act are not here applicable and binding.

Concluding, as we do, that the demands in question are so broadly inclusive as to be unreasonable, and that their enforcement would amount to an unreasonable search and seizure in contravention of the Fourth Amendment, the judgments are reversed and the causes remanded, with direction to dismiss the several petitions.