07–0261-cv
Roe v. City of Waterbury

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
August Term 2007

Argued: May 16, 2008                    Decided: September 11,  2008

Docket No. 07-0261-cv

SUSAN ROE, Jr., ppa ATTY. LYNN JENKINS, GUARDIAN AD LITEM, and JANE DOE, Jr., ppa ATTY. ALLISON JACOBS,

Plaintiffs-Appellants,

v.

THE CITY OF WATERBURY, and PHILIP GIORDANO, I/O MAYOR OF THE CITY OF WATERBURY,

Defendants-Appellees.

Before: JACOBS, MINER, Circuit Judges, and McAVOY, District Judge.[*]

Appeal from summary judgment entered on September 28, 2006 and certified and entered as a final partial judgment on November 16, 2006, in the United States District Court for the District of Connecticut, (Underhill, J.) in favor of municipal defendant-appellee, the District Court having found that former city official was a policymaker but was not acting in his official capacity when he committed tortious acts in violation of 42 U.S.C. § 1983; that municipal defendant-appellee could not be collaterally estopped from relitigating color-of-law issue litigated against former city official in that official's criminal trial; and that a Connecticut governmental immunity statute barred plaintiffs-appellants' state law tort claims against municipal defendant-appellee.

Affirmed.

---

[*] The Honorable Thomas J. McAvoy of the United States District Court for the Northern District of New York, sitting by designation.

ERSKINE D. MCINTOSH, The Law Offices of Erskine D. McIntosh, P.C., Hamden, CT, for Plaintiff-Appellant Susan Roe, Jr.

GERALD HARMON, The Law Offices of Gerald Harmon, Meriden, CT, for Plaintiff-Appellant Susan Roe, Jr.

MICHAEL S. HILLIS, Dombroski, Knapsack, & Hill, L.L.C., New Haven, CT, for Plaintiff-Appellant Jane Doe, Jr.

ELLIOT B. SPECTOR, Noble, Spector, Young, & O'Connor, P.C., Hartford, CT, for Defendant-Appellee.

MINER, Circuit Judge:

Plaintiffs-appellants, Susan Roe, Jr. and Jane Doe, Jr. (collectively, the "Plaintiffs"), appeal from a summary judgment entered on September 28, 2006 which was certified and entered as a final partial summary judgment on November 16, 2006, in the United States District Court for the District of Connecticut (Underhill, J.) in favor of defendant-appellee the City of Waterbury (the "City" or "Waterbury"). The District Court held that the City could not be held liable under 42 U.S.C. § 1983 for acts of sexual abuse committed by the former Mayor of Waterbury, Philip Giordano ("Giordano" or the "Mayor"), because, although Giordano was a final policymaker, he was not acting in his official capacity when he sexually abused Plaintiffs. The District Court also concluded that the City could not be collaterally estopped from relitigating the issue of whether Giordano was acting under "color of law" when he committed the tortious acts because the Plaintiffs could not show that the color of law issue litigated in Giordano's criminal trial was identical to the color of law issue presented here. The District

Court further held that Connecticut's governmental immunity statute barred Plaintiffs' state law claims against the City. For the reasons that follow, we affirm the judgment of the District Court.

**BACKGROUND**

Giordano was elected Mayor of the City of Waterbury, Connecticut, in 1995. Between November 2000 and July 2001, Giordano sexually abused the Plaintiffs on numerous occasions at the mayor's office, in his home, and in his city-issued police cruiser.

At some time before Giordano was elected Mayor, he met Guitana Jones ("Jones"). Thereafter, Jones, a prostitute and crack addict, provided Giordano with sexual favors in exchange for money. These encounters occurred until Giordano's arrest. During the Summer of 2000, Giordano requested that Jones introduce younger women to him. In response, Jones brought her niece, then ten-year-old plaintiff Jane Doe, Jr., and her biological daughter, then eight-year-old plaintiff Susan Roe, Jr., to the Mayor. From approximately November 2000 until July 2001, Giordano solicited sexual acts from Roe and Doe, during which time he was aware of their ages. Giordano arranged with Jones for those sexual encounters through the use of cellular telephones paid for and issued by the City of Waterbury.[1]

On July 26, 2001, Giordano was arrested and charged, inter alia, with depriving the Plaintiffs of their constitutionally protected rights under 18 U.S.C. § 242. See Doe v. City of Waterbury, 453 F. Supp. 2d 537, 540 (D. Conn. 2006). During Giordano's criminal trial, Roe

---

[1] Giordano's conduct that is the subject of this action was discovered during an investigation by the FBI and IRS into political corruption in the City of Waterbury. In the course of surveillance, the government intercepted 151 calls on Giordano's cell phones to or from Jones. See United States v. Giordano, 442 F.3d 30, 33 (2d Cir. 2006).

and Doe separately testified about the sexual acts that they performed during their encounters with the Mayor. Roe further testified that after each encounter Giordano declared that if she told anyone about the sexual acts, her mother would go to jail. On March 25, 2003, a jury found Giordano guilty of 17 of the 18 counts, including the two counts charging Giordano with acting under color of law to deprive Doe and Roe of their constitutional rights to be free from unwanted sexual abuse, in violation of 18 U.S.C. § 242. The District Court denied Giordano's motion to set aside the verdict, and this Court affirmed Giordano's conviction. See United States. v. Giordano, 442 F.3d 30 (2d Cir. 2006).

About four and one-half months after Giordano was arrested, on December 7, 2001, Roe commenced a civil action against Giordano, in both his official and individual capacities, and against the City of Waterbury seeking damages for violations of 42 U.S.C. § 1983 and state law violations based on the same conduct that resulted in Giordano's convictions. Doe initiated a similar action on December 5, 2001 against Giordano and the City, also alleging violations of 42 U.S.C. § 1983 and state law.

On August 18, 2005, Roe moved for summary judgment, claiming that (1) the issue of the violation of her Fourteenth Amendment right to bodily integrity previously was litigated in Giordano's criminal trial and decided in her favor, and (2) defendants should therefore be collaterally estopped from relitigating that issue. Doe also moved for summary judgment on October 31, 2005, arguing that: (1) there was no genuine issue of material fact as to whether Giordano acted under color of law in violating her right to bodily integrity under the Fourteenth Amendment; (2) no genuine issue of material fact existed as to whether Giordano violated Doe's rights under state law; and (3) there was no genuine issue as to whether the City "was the moving

4

force behind the violations of [Doe's] rights because [Giordano] acted as the City's authorized final policymaker." In addition, Doe argued that Giordano's criminal conviction should estop both Giordano and the City from relitigating the issue of whether Giordano deprived Doe of her rights under color of state law.

On December 1, 2005, the City filed a motion seeking summary judgment against Roe and Doe,[2] arguing that (1) Giordano's actions did not represent any official policy of Waterbury and, therefore, as a matter of law, there was no basis for holding the City liable under 42 U.S.C. § 1983 for his actions; and (2) collateral estoppel does not apply to the City because (a) it is not in privity with Giordano, and (b) the legal and factual issues decided in Giordano's criminal trial are not identical to those presented in the civil actions. As of April 4, 2006, when the District Court heard arguments on the parties' summary judgment motions, Giordano had not responded to the Plaintiffs' motions for summary judgment. At oral argument on the parties' summary judgment motions, in lieu of a response, Giordano submitted a copy of his 2006 Petition for Rehearing En Banc to the Second Circuit Court of Appeals.

On September 28, 2006, the District Court granted Plaintiffs' summary judgment motion against Giordano as to the claims brought against him in his individual capacity but denied summary judgment as to the claims against Giordano in his official capacity. The District Court also granted the City of Waterbury's summary judgment motion dismissing all claims brought against the City. Doe, 453 F. Supp. 2d at 537.

On November 16, 2006, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure,

---

[2] The Defendants filed only one motion seeking summary judgment against both Plaintiffs, although the Roe and Doe actions were not consolidated by the District Court until April 7, 2006.

the District Court granted Plaintiffs' motion seeking certification of partial summary judgment and directed entry of partial final judgment in favor of Waterbury with respect to all claims against Waterbury.

On January 19, 2007, Plaintiffs timely appealed the September 28, 2006 order to the extent that the claims were certified and entered as a final judgment in the November 16, 2006 order.

**ANALYSIS**

I.     Jurisdiction

Because Plaintiffs appeal the final judgment the District Court entered in favor of Waterbury on November 16, 2006, pursuant to Rule 54(b), we have jurisdiction pursuant to 28 U.S.C. § 1291, which grants jurisdiction over "appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291.

II.     Standard of Review

We review a grant of summary judgment de novo. State Street Bank & Trust Co. v. Salovaara, 326 F.3d 130, 135 (2d Cir. 2003). Summary judgment shall be "rendered if the pleadings, the discovery and disclosure materials on the files, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." Id.

This standard dictates that courts must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (internal quotation marks and citation omitted). Once the moving party demonstrates that there are no genuine issues of material fact, the nonmoving party "must come forth with evidence sufficient to allow a reasonable jury to find in [its] favor." Id. at 251 (internal citation omitted). Thus, a nonmoving party can defeat a summary judgment motion only "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of [an] element at trial." Grain Traders, Inc. v. Citibank, N.A., 160 F.3d 97, 100 (2d Cir. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Fed. R. Civ. P. 56(c)).

III.    Municipal Liability Pursuant to 42 U.S.C. § 1983

The Plaintiffs claim that the District Court erred in granting the City's motion for summary judgment dismissing all claims against it based on the sexual abuse committed by Giordano. Specifically, Plaintiffs argue that the municipality should be held liable under § 1983 because: (1) Giordano was a final policymaker for the City; and (2) he was acting within his official policymaking capacity when he sexually abused Plaintiffs. The City contends that the Mayor was neither fulfilling nor acting within the scope of his official policymaking duties when he sexually abused Plaintiffs, and, therefore, § 1983 liability cannot attach to the City. The District Court granted the City's summary judgment motion and denied Plaintiffs' motions for summary judgment on the grounds that the City cannot be held liable where the Mayor did not commit the tortious acts while acting in his official policymaking capacity.

7

A.     Municipal Liability Based on Acts of Officials

Section 1983 provides, in pertinent part:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury.  Monell v. Dep't of Social Servs., 436 U.S. 658, 690–91 (1978).  The fifth element — the "official policy" element — can only be satisfied where a plaintiff proves that a "municipal policy of some nature caused a constitutional tort."  Id. at 691.  "In other words, a municipality may not be found liable simply because one of its employees committed a tort."  Bd. of County Comm'rs v. Brown, 520 U.S. 397, 405 (1997).

The Supreme Court has made clear that "a municipality cannot be made liable" under § 1983 for acts of its employees "by application of the doctrine of respondeat superior. "  See Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 122 (1988) ("[G]overnment bodies can act only through some natural persons[; therefore] governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").  "Liability for unauthorized acts is personal; to hold the municipality liable, Monell tells us, the agent's actions must implement rather than frustrate the government's policy."  Auriemma v. Rice, 957 F.2d

397, 400 (7th Cir. 1992). Therefore, a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the alleged injury. Brown, 520 U.S. at 404.

B.     Municipal Liability for Single Act of Final Policymaker

Where a plaintiff seeks to hold a municipality liable for a "single decision by [a] municipal policymaker[]," Pembaur, 475 U.S. at 480, the plaintiff must show that the official had final policymaking power, see Praprotnik, 485 U.S. at 123 (explaining that "only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability"). Moreover, the challenged actions must be within that official's area of policymaking authority. Id. (explaining that, pursuant to Pembaur "the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business); see also Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000) (explaining that the government official must be a final policymaker with respect to the particular conduct challenged in the lawsuit).

An official has final authority if his decisions, at the time they are made, "may fairly be said to represent official policy." McMillian v. Monroe County, Alabama, 520 U.S. 781, 784 (1997); see Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003). Whether an official has final policymaking authority is a legal question, determined on the basis of state law. Jeffes, 208 F.3d at 57. As stated, the critical inquiry is not whether an official generally has final policymaking authority; rather, the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit. Id. (internal citations omitted).

9

C. Whether Giordano was a Final Policymaker for the Relevant Area of Policy

Plaintiffs argue that Waterbury is liable for Giordano's actions because he was the Mayor and final policymaker of the City in the areas of law enforcement, safety, and social issues; and as a result he had final policymaking authority over the area of conduct that included his abusive acts. Doe asserts that the City of Waterbury's Charter created a "strong mayor" form of government that provided Giordano with exceptionally broad supervisory appointment, budgetary, and oversight powers. Plaintiffs further claim that Giordano acted within his official policymaking capacity because he used the City's cellular phones to arrange for the sexual encounters, many of which occurred in the Mayor's office and in an unmarked police cruiser. Plaintiffs' theory is that when Giordano acted, it was as if the City acted, such that Giordano was the "government itself," and his actions therefore fairly represented the official policy of Waterbury.

The City responds that Giordano could not have been a final policymaker with respect to the area of policy encompassing his tortious conduct, because that conduct was purely personal and could not be said to represent any policy of the City. The City further argues that even if Giordano was an official policymaker in some respects, he was not implementing official policy when he sexually abused Plaintiffs. The City argues that the Plaintiffs' theory amounts to a respondeat superior argument and, according to Plaintiffs' argument, any tort committed by the Mayor would constitute official policy.

We agree with the City that Giordano was not an official policymaker with respect to the area of policy that encompassed his tortious acts. "An official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final

10

decisions." Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003). Decisions to sexually abuse young children are not "made for practical or legal reasons" and are not in any way related to the City's interests. The City cannot be said to be the "moving force" behind the abuse. See Brown, 520 U.S. at 404.

As the Mayor of Waterbury, Giordano was the Chief Executive Officer of the City under both the municipality's Charter and state law. See CONN. GEN. STAT. § 7-193(a)(2). We agree that the Mayor's powers were generally broad. For example, § 2102(e) of the City's Charter delegated to the Mayor the power over personnel functions, including setting departmental policies, creating positions, and establishing compensation rates. The City's Charter also granted the Mayor enforcement powers. Section 2101(a) provided that the Mayor's duties were to "cause the laws and ordinances to be executed and enforced and to conserve the peace within the city . . . ." All of the various City departments' budget proposals would go to the Mayor for review and approval, including the budget for the Police Department. Giordano acted as chairman of the City's Police Board meetings, made appointments to that Board, implemented new hiring polices for the City's Police Department, and played a key role in promoting police officers. In addition, the City's Police Department regularly alerted the Mayor of serious crimes scenes, and the Mayor would arrive at those scenes in his City-issued police cruiser and be briefed by the officer in charge. The Mayor also watched over police drug raids and other crime-fighting operations within the City.

Giordano promulgated the City's Sexual Harassment Policy, which stated that sexual harassment is a violation of Title VII of the Civil Rights Acts of 1964, as well as Connecticut State Law. The policy expressly provided that "supervisors shall not use their authority to solicit

11

subordinates for sexual favors . . . ." The policy defined physical sexual harassment as "[u]nwanted physical contact, including touching, pinching, brushing the body, coerced sexual intercourse, and assault."

The District Court found that Giordano was a final policymaker for the City of Waterbury, but it concluded that municipal liability did not attach because Giordano was not acting in his official capacity when he sexually abused Plaintiffs. Doe, 453 F. Supp. 2d at 544. The District Court found that Giordano was "generally a final policymaker for Waterbury," id. but a finding of general policymaking power on the part of the Mayor is not sufficient for municipal liability to attach. In Jeffes, we made clear that "[t]he court must ask whether [the] governmental official [is a] final policymaker [ ] for the local government in a particular area, or on [the] particular issue involved in the actions." 208 F.3d at 57 (internal quotation marks and citation omitted). Here, it cannot be said that the Mayor had policymaking authority with respect to the acts of sexual abuse he committed.

The Charter may have given the mayor power and influence over the activities of the Police Department, which is one instrument of the state's authority under its "police powers" to protect the health and safety of the citizenry. Cf. Desiano v. Warner-Lambert & Co., 467 F.3d 85, 86 (2d Cir. 2006) ("[I]t has long fallen within the province of states [pursuant to their police powers] to safeguard the health and safety of their citizens."). However, the Charter did not grant the Mayor the power to change or violate clearly established law. As this Court held in Jeffes, in order to fasten liability upon a municipality for the specific acts of an official, the official in question "must be responsible under state law for making policy in that area of municipality's business," and that the official "must possess [ ] final authority to establish

12

municipal policy with respect to the action ordered." 208 F.3d at 57 (internal quotation marks and citations omitted).

In support of their position, Plaintiffs-appellants rely on cases from other Circuits that have found municipal liability for single acts of policymakers, many of which involved retaliatory conduct, including firings, by policymakers. We find that the cases involving retaliatory conduct are inapposite because of the distinct facts presented here.

First, Plaintiffs cite Hollins v. Powell, 773 F.2d 191 (8th Cir. 1985), in which the Eighth Circuit held the city of Wellston, Missouri liable for its mayor's actions. In Hollins, volunteer commissioners appointed by the mayor's predecessor assembled for a meeting at city hall, and the mayor had the commissioners arrested for "unlawful assembly" after he questioned the legality of their appointments and after they did not comply with his request to leave city hall. Hollins is distinguishable. In Hollins, the Eighth Circuit made clear that plaintiffs had proven that the mayor had the authority "under governmental structure of the City of Wellston" to have the plaintiffs arrested. Id. at 195. Thus, the official municipal policy caused the constitutional violation because the mayor of Wellston was acting wholly within and pursuant to the policy and powers granted him. See id. (The arrest was "not merely an aberrant act of a high city official . . . . [The mayor] had under the governmental structure of the City of Wellston the authority to order [the commissioners'] arrest or "removal" from City Hall.").

In Williams v. Butler, 863 F.2d 1398 (8th Cir. 1988), which Plaintiffs also rely on, the Eighth Circuit held that the city of Little Rock, Arkansas could be held liable for an elected traffic court judge's firing of two employees who reported the judge's destruction of traffic tickets to the police. Williams is also distinguishable. In that case, it was clear that the traffic

13

court judge had the exclusive authority to hire and fire personnel and that the personnel served at his "sole pleasure." Id. at 1399. Thus, as in Hollins, the official policy caused the violation because the traffic court judge was acting pursuant to and wholly within, not in violation of, the authority delegated to him. See Williams, 863 F.2d at 1402 (explaining that the traffic court judge was a final policymaker and that he was "exercising policymaking authority" when he fired the two employees).

Equally inapposite is Patterson v. Utica, 370 F.3d 322 (2d Cir. 2004). That case involved a stigma-plus claim based on the firing of municipal employees by the mayor of Utica, New York. Patterson is like Williams in that the mayor had exclusive appointment authority, so the mayor was acting within and pursuant to the authority granted him. Similarly, Rookard v. Health and Hospital Corp., 710 F.2d 41, 45 (1983), involved a Health and Hospital Corporation official's allegedly retaliatory transfer and eventual firing of a nurse. In Rookard, the official had full authority to order both the transfer and the discharge. Id.

On similar grounds, in Gronowski v. Spencer, 424 F.3d 285 (2d Cir. 2005), we affirmed a jury's finding that the city of Utica, New York was liable under section 1983 where the mayor was responsible for the unlawful termination of the plaintiff in retaliation for her support of a rival of the mayor. See id. at 296–97. Like Williams, Patterson, and Rookard, the mayor of Utica was exercising power granted to him in his capacity as mayor when he unlawfully terminated the plaintiff. Thus, it can be said that the municipal policy — the mayor's final authority over hiring and firing — caused the constitutional injury, thereby satisfying the "official policy" element for municipal liability under § 1983.

Throughout the above-cited cases, the courts predicated municipal liability on the fact that the municipalities had officially vested the actors with the authority to carry out the actions

14

causing the civil rights violations. The individuals in those cases violated the constitutional rights of another person in furtherance of municipal policies — the municipal policies therefore were the "moving force" behind the constitutional injuries. Here, however, the actions taken by Giordano were in an area in which he was not a policymaker. Giordano had no authority to make policy authorizing, condoning, or promoting the sexual abuse of children. Regardless of what broad powers he had as a mayor, the state of Connecticut has made the policy (and the laws) prohibiting such conduct. Giordano might, at most, be said to have had some enforcement power with respect to the crime of sexual abuse based on his authority over the police department.

Plaintiffs also rely on two Fifth Circuit cases, but we do not agree with the approach taken in those cases. Turner v. Upton County, Texas reversed a summary judgment in favor of Upton County, our sister circuit holding that the county would be liable if the plaintiff could prove that: the sheriff planted illegal drugs on plaintiffs' business premises and, after seizing the drugs pursuant to an arrest warrant and securing an indictment against her, conspired with the county's district attorney to force her to trial, for which he had secured perjured testimony. 915 F.2d 133 (5th Cir. 1990). Turner explained:

> The county contends that it cannot be subject to liability because it did not authorize the sheriff to violate the law. This argument is without merit. Where a final policymaker abuses the powers vested in his position to the detriment of a citizen, that abuse can be the basis for suit being brought under section 1983.

Id. at 137 n.3. In our view, however, the sheriff in Turner was not a final policymaker — his conduct amounted only to tortious acts under the color of law.

Nevertheless, even assuming the Sheriff in Turner was a policymaker, that case is distinguishable. There, at least something of a nexus existed between the sheriff's actions and his job functions, which presumably included investigating and apprehending criminals and

15

assisting the prosecutor in securing convictions. Here, however, there was nothing in Giordano's behavior that could have advanced any conceivable job function or any conceivable policy goal or interest of the City. Thus, even if advancing an otherwise legitimate policy goal in an illegal or unauthorized manner can, under some circumstances, fall within official policymaking, advancing a purely personal agenda clearly cannot.

Plaintiffs also rely on Bennett v. Pippin, 74 F.3d 578 (5th Cir. 1996), in which a county sheriff went to the plaintiff's house to question her regarding a murder investigation and, during the course of the questioning, raped her. Id. at 586. The court held that the rape could constitute a county policy because the sheriff's "relationship with Bennett grew out of the attempted murder investigation and because . . . he used his authority over the investigation to coerce sex with her." Id. The Fifth Circuit reasoned that "[t]he fact that rape is not a legitimate law enforcement goal does not prevent the Sheriff's act from falling within his law enforcement function." Id. The Fifth Circuit explained that the existence of a well-defined official policy contrary to the policymaker's decision would not insulate the municipality from liability. Id. Since the sheriff acted tortiously under the color of law, the Fifth Circuit reasoned that the municipality should also be held liable. Id. In our view, Bennett cannot be reconciled with Pembaur and Praprotik's prohibition against finding municipal liability based on respondeat superior. Consequently, we decline to follow the Fifth Circuit's reasoning with respect to municipal liability under § 1983.

A finding of municipal liability in this case would amount to a finding of respondeat superior and would be an unwarranted expansion of the single-act rule set forth in Pembaur. It would also conflate the color of law inquiry with the official policy inquiry. An official acts within his official policymaking capacity when he acts in accordance with the responsibility delegated him under state law for making policy in that area of the municipality's business. See

16

Jeffes, 208 F.3d at 57. An official acts wholly outside his official policymaking capacity when he misuses his power to advance a purely personal agenda. Here, Giordano acted neither pursuant to nor within the authority delegated to him when he committed the acts of sexual abuse. Summary judgment is appropriate in this case because the Plaintiffs are unable, as a matter of law, to "com[e] forward with evidence that would be sufficient, if all reasonable inferences were drawn in [their] favor, to establish existence of" the official policy element for municipal liability under § 1983. Grain Traders, Inc., 160 F.3d at 100. Therefore, we affirm the holding of the district court finding that liability cannot be imposed on the City of Waterbury under § 1983.

IV.     Collateral Estoppel

Plaintiffs also seek to apply the doctrine of offensive collateral estoppel to prevent the City of Waterbury from relitigating the color of law element of § 1983 liability based upon the Mayor's previous conviction under 18 U.S.C. § 242 for sexually abusing Plaintiffs.

The doctrine of offensive collateral estoppel permits a plaintiff to bar a defendant from relitigating an issue that was decided in a prior case against the defendant. To do so, a plaintiff must show that:

> (1) the issues of both proceedings are identical; (2) the relevant issues were actually litigated and actually decided in the prior proceedings; (3) there was a full and fair opportunity for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgement on the merits.

Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2d Cir. 1995). In Giordano's criminal trial, the Government was required to prove that (1) Giordano "willfully" and (2) under color of law (3) deprived a person of rights protected by the Constitution or laws of the United States. United States v. Giordano, 442 F.3d 30, 42–47 (2d

17

Cir. 2006); see Doe, 453 F. Supp. 2d at 550. The District Court found that collateral estoppel could not be applied because the color-of-law issue in this case is not identical to the color-of-law issue in the criminal case. Although we ruled that Giordano was acting under color of law when he molested the Plaintiffs, the claims here fail under the "official policy" element. We therefore see no need to make a determination as to whether the requirements for the application of offensive collateral estoppel have been satisfied.

V.    State Law Claims

Plaintiffs also challenge the District Court's grant of summary judgment in favor of Defendants as to their state law tort claims, which included intentional infliction of emotional distress, negligent infliction of emotional distress, sexual assault, battery, and negligent supervision. See Doe, 453 F. Supp. 2d at 548. The District Court found that Plaintiffs' state law claims were barred by government immunity pursuant to Connecticut law. See CONN. GEN. STAT. § 52–557n(a)(2)(A) ("Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct.") Roe argues that Connecticut law provides for an exception to government immunity where a state official was acting within the scope of his official duties.

If Giordano had been acting as a final policymaker, the exception cited by Roe, see CONN. GEN. STAT. § 52-557n(a)(1), might overcome governmental immunity as to the negligent infliction of emotional distress and negligent supervision claims. See id. ("Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of . . . any employee, officer or agent

18

thereof acting within the scope of his employment or official duties.").[3] However, because Giordano was not a final policymaker for the subject matter encompassing his tortious acts, he was not acting in his official capacity when he committed those acts, and the exception set forth in CONN. GEN. STAT. § 52-557n(a)(1) therefore does not bar the application of governmental immunity with respect to the claims grounded in negligence. As for the other claims, the City is protected by governmental immunity from Giordano's acts, which were criminal as well as intentionally tortious. See McCoy v. City of New Haven, 92 Conn. App. 558, 568 (Conn. App. Ct. 2005) (affirming dismissal of claim pursuant to C.G.S. § 52-557n(a)(2)(A) based on intentional tort committed by city employee). Accordingly, we affirm the District Court's summary judgment dismissing the state law claims against the City.

**CONCLUSION**

The judgment of the District Court is AFFIRMED.

---

[3] Roe also relies upon Colon v. City of New Haven, 60 Conn. App. 178 (Conn. App. 2000), which held that CONN. GEN. STAT. § 52-557n(a)(2)(A) does not abrogate the common law exception to government immunity for the performance of discretionary acts "where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." Colon, 60 Conn. App. at 184. However, Colon is inapposite because that case involved an official's discretionary acts, which the court defined as an official act "the hallmark [of which] is that it requires the exercise of judgment." Id. at 181. Giordano's acts cannot be considered discretionary acts.

19