17-3595-cv
Ennio Morricone Music v. Bixio Music Group

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2018
No. 17-3595-cv

ENNIO MORRICONE MUSIC INC.,
*Plaintiff-Appellant,*

*v.*

BIXIO MUSIC GROUP LTD.,
*Defendant-Appellee.*[1]

ARGUED: FEBRUARY 22, 2019
DECIDED: AUGUST 21, 2019

Before:        KEARSE, JACOBS, HALL, *Circuit Judges.*

This case concerns the copyright ownership of six scores composed by Ennio Morricone for Italian films.  Mr. Morricone was commissioned by an affiliate of the defendant, Bixio Music Group Ltd., to compose the scores in the late 1970s and early 1980s.  In exchange for an upfront payment and limited royalties, Mr. Morricone assigned his rights in the scores to Bixio.  In this declaratory judgment action, the plaintiff, Ennio Morricone Music Inc. (as assignee of Morricone's copyrights), seeks to terminate that assignment of the copyrights pursuant to the U.S. Copyright Act, 17 U.S.C. § 203, which provides that an assignment may be terminated after 35 years.  The United States District Court for the Southern District of New York (Forrest, J.) granted summary judgment to Bixio, concluding that Morricone Music had no right to terminate

---

[1] The Clerk of Court is respectfully directed to amend the caption as set forth above.

the assignment because the scores were the Italian equivalent of "works made for hire," and therefore excepted from the right of termination.  See 17 U.S.C. § 203(a) (termination shall be available for "any work other than a work made for hire").  Because we conclude that the scores were not "works made for hire" under either Italian law or U.S. law, we reverse.

JANE CAROL GINSBURG, COLUMBIA UNIVERSITY SCHOOL OF LAW, NEW YORK, NY (WITH TIMOTHY O'DONNELL, NEW YORK, NY, ON THE BRIEF), FOR PLAINTIFF-APPELLANT ENNIO MORRICONE MUSIC, INC.

BARRY I. SLOTNICK (WITH C. LINNA CHEN ON THE BRIEF), LOEB & LOEB LLP, NEW YORK, NY, FOR DEFENDANT-APPELLEE BIXIO MUSIC GROUP, LTD.

DENNIS JACOBS, *Circuit Judge*:

Italian composer Ennio Morricone was commissioned by Edizioni Musicali Bixio, an affiliate of the defendant Bixio Music Group Ltd. (together, "Bixio"), to compose the scores for six Italian films in the late 1970s and early 1980s.[2]  In exchange for an upfront payment and limited royalties, Mr. Morricone assigned his rights in the scores to Bixio.  In this declaratory judgment action, Mr. Morricone's assignee, Ennio Morricone Music Inc. ("Morricone Music"), asserts a right to terminate the assignment of the copyrights to Bixio under 17 U.S.C. § 203, which provides that an assignment may be terminated after 35 years, such that Morricone would regain all rights in the scores except for Bixio's right to use them in the existing films.  The United States District Court for the Southern District of New York (Forrest, J.) granted summary judgment to Bixio, concluding that the scores were excepted from the termination right because they were the Italian equivalent of "works made for hire."  See 17 U.S.C. § 203(a)

_____

[2] By agreement with Edizioni Musicali Bixio, the defendant, Bixio Music Group Ltd., is the administrator of the U.S. copyrights in the scores.  Because the distinction between Edizioni Musicali Bixio and Bixio Music Group Ltd. is immaterial for the purposes of this case, we refer to them together as Bixio.

(termination shall be available for "any work other than a work made for hire"). Because we conclude that the scores are not "works made for hire" under Italian law, we reverse.

## BACKGROUND

In the late 1970s and early 1980s, Bixio, an Italian music publisher, entered into written agreements--identical in all material respects--with the composer Ennio Morricone to compose scores for six films. Each agreement required Mr. Morricone to "[compose] the original musical score of said film; [m]usically arrang[e] said music; [and] [c]onduct[] the orchestra that will play the film's musical score." App'x 83. Mr. Morricone was required to complete the works by a certain date, and to make the recordings in Rome. App'x 86. As consideration for his work, Morricone received: a one-time upfront payment of three million Italian lire; limited ongoing royalties from the use of the score with the film and separate from the film; a credit in the film; and three hundred copies on phonographic discs.

Mr. Morricone agreed to the following transfer of rights to Bixio:

> You do hereby **grant and transfer** to us, exclusively, **for the maximum total duration permitted by the laws in force in each country in the world**, and at the conditions established here below, **all the rights of economic use, in any country in the world, with regard to the works**.
>
> By effect of the transfers implemented above, we shall have the exclusive right to use the works to produce the recordings thereof, which shall be transferred into the film's musical soundtrack; and/or to have the works disseminated along with the film; and/or to have parts thereof disseminated along with parts of the film when presenting the film to the public; and/or to have the works published, to have them reproduced in print, through phonography, and/or with any other reproduction procedure; to execute and perform them, and to disseminate them using any remote broadcasting medium (such as telephony, radio broadcasting, television and other similar media); to place them into the stream of commerce and lease them out; to translate and/or adapt any literary texts into any foreign language and/or to make versions thereof in

3

different dialects; to process, modify, and adapt the musical parts . . . .

App'x 85 (emphases added). As to duration of that transfer, the contracts further provide that "[t]he film's soundtracks and its tapes, music, orchestrations, records, etc. are and shall forever continue to be the absolute and exclusive property of [Bixio] who shall be free to use them as [it] pleases at any time and in all Countries of the world." App'x 97.

Bixio registered a claim with the American Society of Composers, Authors, and Publishers to collect all royalties from the public performance of the scores in the United States. In 2012, Morricone Music served Bixio with a notice terminating the assignment of its U.S. copyrights in the scores under 17 U.S.C. § 203, which allows copyright owners to terminate a contractual assignment after 35 years. Bixio contested the termination on the ground that the works are excepted from § 203's termination right because they are "works made for hire."

Whether Morricone Music had the right to terminate the copyrights under § 203 turns on a single question of law: whether the scores are "works made for hire," and therefore excepted from § 203's termination right. On cross-motions for summary judgment, the district court granted summary judgment in favor of Bixio, concluding that Morricone Music did not have a right of termination.

**DISCUSSION**

We review the district court's summary judgment decision <u>de novo</u>. <u>Roe v. City of Waterbury</u>, 542 F.3d 31, 35 (2d Cir. 2008). Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Morricone Music asserts the right to terminate its assignment to Bixio under 17 U.S.C. § 203, which provides: "[i]n the case of any work other than a work made for hire, the exclusive or nonexclusive grant of a transfer or license of copyright or of any right under a copyright, executed by the author on or after January 1, 1978, otherwise than by will, is subject to termination . . . at the end of thirty-five years from the date of execution of the grant." At issue here are the rights to reproduce the music in new recordings, to perform the music, or to sell the music for use in other films. Even if Morricone Music has termination rights under Section 203, it cannot terminate the contractual assignment to use the

4

scores in the motion picture because "[a] derivative work prepared under authority of the grant before its termination may continue to be utilized under the terms of the grant after its termination." 17 U.S.C. § 203(b)(1).

Thirty-five years have elapsed; accordingly, Morricone Music is within its rights to terminate unless the works are "made for hire." Neither party contends that the works qualify as "works made for hire" under U.S. law. Under 17 U.S.C. § 101, a work that is embedded in another work is a "work made for hire" if it is "[1] prepared by an employee within the scope of his or her employment; or [2] specially ordered or commissioned for use . . . as a part of a motion picture or other audiovisual work . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." 17 U.S.C. § 101. Mr. Morricone was not a Bixio employee; and none of the contracts specify that the scores shall be considered "works made for hire." Accordingly, by its literal terms, the exception does not apply under U.S. law.

However, the parties agree that the contracts, and this dispute, are governed by Italian law.[3] Therefore, Bixio contends that the decisive question is actually whether Italian law recognizes a counterpart to the U.S. doctrine of "works made for hire." Specifically, Bixio identifies the Italian statutory doctrine governing "commissioned" works as an analog sufficiently close to U.S. law that the scores should be considered "works made for hire" under U.S. law. However, a comparison of the two statutory schemes, in the context of the contracts at issue, reveals meaningful differences.

U.S. and Italian law allocate authorship status differently. Under 17 U.S.C. § 201(b), "[i]n the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all the rights comprised in the copyright." Under this scheme, the commissioner of the work is considered the author <u>ab initio</u>, and is vested from the work's creation with all rights to economically exploit the work. <u>See</u> <u>Marvel Characters, Inc. v. Kirby</u>, 726 F.3d 119, 137 (2d Cir. 2013) ("Where a work is 'made for hire,' copyright law deems the [funder] to be the 'author' for

---

[3] The parties agree that Italian law governs their dispute. We therefore do not consider or pass on any underlying choice-of-law issues. <u>See generally</u> <u>Itar-Tass Russian News Agency v. Russian Kurier, Inc.</u>, 153 F.3d 82 (2d Cir. 1998).

purposes of copyright ownership. . . . The hired party, although the 'author' in the colloquial sense, therefore never owned the copyrights . . . . It stands to reason, then, that there are no rights the assignment of which his or her heirs may now terminate." (internal quotation marks and citations omitted)).

In contrast, under Article 44 of the Italian Copyright Code, the composer of the music is considered a "joint-author" of the cinematographic work, along with the writer and artistic director, and the composer retains sole authorship in the score itself. See Valerio De Sanctis, Copyright: A Quarterly Review Published by the Legal Council of the Italian Association of Authors and Editors, at 97 (1990) ("[T]he creation physically vests the author as creator, and the commissioning entity's right can only be a derivative right transmitted to it with delivery of the work . . . any fictitious replacement of the original ownership [is] excluded." (citing Cassation Court Decision No. 3439 (June 7, 1982) and Cassation Court Decision No. 7109 (Dec. 23, 1982))). The designation of the "author"--as either the commissioner or the creator--is a key distinction because, under § 203, it is the assignment of rights "by the *author*" that is subject to termination.

Moreover, unlike U.S. law, Italian law does not require use of a technical phrase to qualify a work as "commissioned." Under the U.S. Copyright Code, unless the work was created by an employee for the employer (a situation inapplicable here), there must be a writing, signed by *both* parties, specifying that the work is "made for hire." 17 U.S.C. § 101. These requirements to qualify a work as a "work made for hire" are straightforward and easy to apply. This technical writing requirement furthers the goal of ensuring that all commissioned works are not categorically deemed "works made for hire." See Patry on Copyright, § 5.48 ("The principal purpose of the writing requirement for specifically ordered or commissioned works is to protect non-work-for-hire authors from the expansive work for hire decisions under the 1909 Act: those decisions were on the fast track into turning all specially ordered or commissioned works presumptively into works made for hire, and *without* any agreement between the parties, oral or written."). The writing requirement also saves courts the knotty work of sorting out the parties' intent years after the assignment of a copyright. The Italian scheme does not require such a writing in order to qualify a work as "commissioned"--let alone a writing with a talismanic phrase to eliminate all doubt. The Italian scheme is thus missing an important feature of the U.S. system, and could result in an overbroad application of the "work made for hire" doctrine.

Lastly, Bixio emphasizes that Italian law permits an author to assign by contract all rights in the work to the commissioner of the work, and that the parties executed such a contract in this case. See App'x 85 ("You do hereby grant and transfer to us, exclusively, for the maximum total duration permitted by the laws in force in each country in the world, and at the conditions established here below, all the rights of economic use, in any country in the world, with regard to the works."). Bixio argues that this contractual assignment demonstrates the parties' intent to allocate rights as if the scores were "works made for hire" under U.S. law.

As an initial matter, the transfer of "all the rights of economic use" was for "the maximum total duration permitted by the laws in force in each country in the world." App'x 85. This wording is evidently intended to be expansive. The maximum total duration permitted by the laws of the United States is thirty-five years plus such additional period as the assignor allows until the exercise of the option to terminate. The contract wording therefore does not foreclose termination under § 203.[4]

Moreover, the form of the assignment is telling. Under U.S. law, a contractual assignment, no matter how expansively phrased, is still subject to the termination right. See 17 U.S.C. § 203(a)(5) ("Termination of the grant may be effected notwithstanding any agreement to the contrary."). The only exception to that right is if the work qualifies as a "work made for hire" under 17 U.S.C. § 101, and the commissioner of the work is statutorily deemed the author from the work's conception: there is no other author, and there never was one. As discussed above, Italian law does not recognize a comparable allocation of authorship ab initio by statute, even if a contract between the parties grants all economic rights of exploitation to the commissioner. See P. Auteri, Diritto Industriale: Proprieta Intellettuale e Concorrenza (Industrial Law: Intellectual Property and Competition), at 586 (4th Ed.) ("[T]he business owner's acquisition of useage rights is derivative in the sense that it is based on contractual relations, and it is the contract itself that must be consulted to determine if and which

_____

[4] Additionally, the contracts in this case also granted Mr. Morricone the right to collect royalties from the use of the scores, both with the movie and separately. While this does not foreclose the possibility that the works are "made for hire," we think that that payment structure tends to suggest that the parties did not intend Mr. Morricone to be stripped of all his rights in the scores.

rights are being acquired.").  This contractual assignment of rights is therefore subject to the termination right of § 203.

## CONCLUSION

For the foregoing reasons, we hereby **REVERSE** the judgment of the district court and **REMAND** for entry of judgment in favor of Ennio Morricone Music, Inc.