**Robert ZANI, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**RITE AID HEADQUARTERS CORP., Defendant.**

14–cv–9701 (AJN)

United States District Court, S.D. New York.

Signed 03/30/2017

Sergei Lemberg, Lemberg Law, LLC, Wilton, CT, Stephen F. Taylor, Lemberg & Associates L.L.C., Stamford, CT, Amy L. Wells, Keith Keogh, Timothy Sostrin, Keogh Law, Ltd., Chicago, IL, John A. Yanchunis, Pro Hac Vice, Marcio W. Valladares, Pro Hac Vice, Morgan & Morgan Complex Litigation Group, Tampa, FL, for Plaintiff.

Brian Garrett, pro se.

Shannon Z. Petersen, Lisa Soung Hee Yun, Sheppard, Mullin, Richter & Hampton, LLP, San Diego, CA, Brian Bradford Garrett, Rena Andoh, Sheppard, Mullin, Richter & Hampton, LLP (NYC), New York, NY, for Defendant.

## OPINION AND ORDER

ALISON J. NATHAN, United States District Judge

On December 23, 2014, the Plaintiff, Robert Zani, individually and on behalf of all those similarly situated, filed an Amended Complaint against Rite Aid Headquarters Corporation for negligent and willful violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, in connection with a prere- corded, automated call the Defendant made to Plaintiff's cell phone in 2014 alerting him to the availability of flu shots at Rite Aid pharmacies. *See* Dkt. No. 7 (hereafter "Amended Complaint"). Before the Court are the Plaintiff's motion for class certification, under Federal Rule of Civil Procedure 23, *see* Dkt. No. 87, and the Defendant's motion for summary judgment or, in the alternative, partial summary judgment, under Federal Rule of Civil Procedure 56, *see* Dkt. No. 78; *see also* Dkt. No. 79 (hereafter "Def. Mot."); Pl. Opp.[1]; Dkt. No. 105 (hereafter "Reply"). For the reasons stated below, the Court GRANT'S the Defendant's motion for summary judgment, and thus denies the Plaintiff's motion for class certification as moot.

## I. Background

The following facts are undisputed unless otherwise noted:

Rite Aid Corporation is a holding company, which owns Rite Aid Headquarters Corporation (the Defendant in this case, hereafter "Rite Aid" or "Rite Aid HQ"), as well as more than 100 additional subsidiaries. *See* Pl. Add'l Facts ¶ 1.[2] Among these subsidiaries are numerous affiliates of Rite Aid HQ, including Rite Aid of New York, Inc. ("Rite Aid NY"), which owns and operates a Rite Aid–branded pharmacy in Highland Falls, NY. Palmer Decl. ¶¶ 5–6; Pl. Add'l Facts ¶ 9. Rite Aid HQ does not itself directly provide prescriptions or healthcare to patients. Pl. Rule 56.1 ¶ 2;

1. On May 6, 2016, the Plaintiff filed his opposition brief, and various exhibits, under seal, and Rite Aid moved to seal certain documents attached to Plaintiff's brief and referenced therein. This Court has not yet ruled on that sealing application.

2. The Court cites to the Defendant's Local Rule 56.1 Statement as "Def. Rule 56.1 ¶ [#]." That statement appears at Dkt. No. 80.

The Plaintiff's responsive Rule 56.1 statement was submitted under seal with his opposition brief. The Court cites to that statement as follows: when citing to the Plaintiff's responses to Defendant's cited facts, the Court cites to "Pl. Rule 56.1 ¶ [#]." When citing to additional facts that the Plaintiff adds to his responsive statement, the Court cites to "Pl. Add'l Facts ¶ [#]."

Pl. Add'l Facts ¶¶ 5–6; Reply at 2–3. Rite Aid NY, however, provides medication to patients through its local pharmacies. These medications include flu shot vaccines that require a prescription that may be filled by physicians or Rite Aid pharmacists. Def. Rule 56.1 ¶¶ 2–4; Pl. Rule 56.1 ¶¶ 2–4.

■ The Plaintiff, Robert Zani, is over 65–years old, with health conditions that make him particularly susceptible to influenza. Def. Rule 56.1 ¶ 33.[3] On September 7, 2013, Plaintiff first received a prescription from Rite Aid NY. Def. Rule 56.1 ¶ 26; Pl. Rule 56.1 ¶ 26. At this time, Plaintiff gave Rite Aid NY certain personal information, including his cellular phone number, and listed it as his primary and only number. Rite Aid HQ thereafter created a profile of Plaintiff including that information. Def. Rule 56.1 ¶ 27; Pl. Rule 56.1 ¶ 27. Plaintiff proceeded to fill prescriptions at the Highland Falls Rite Aid pharmacy operated by Rite Aid NY on October 24, 2013, and July 22, 2014. Def. Rule 56.1 ¶ 28; Pl. Rule 56.1 ¶ 28. Each time he did so, he signed a Notice of Privacy Practices which included the "Rite Aid" brand prominently displayed and indicated that "[w]e [Rite Aid] may contact [Plaintiff] to provide refill reminders or information about treatment alternatives or other health related benefits and services that may be of interest." Def. Rule 56.1 ¶ 29; Pl. Rule 56.1 ¶ 29; Zabroske Decl. Ex. C.

■ On October 24, 2013, Plaintiff received a flu shot from Rite Aid NY through a prescription filled out by a Rite Aid pharmacist. Def. Rule 56.1 ¶ 30; PL Rule 56.1 ¶ 30. In particular, the Plaintiff received a prescription for Afluria, a specific variety of flu shot, with no refills. Pl. Add'l Facts ¶ 10. Prior to receiving the flu shot, Plaintiff filled out a flu shot form and provided Rite Aid NY his personal phone number. Def. Rule 56.1 ¶ 31; Pl. Rule 56.1 ¶ 31. Plaintiff regularly receives an annual flu shot. D. Rule 56.1 ¶ 32.[4] It is further undisputed that each year, the specific flu shots offered by Rite Aid, and others, change in response to particular strains of flu. Pl. Add'l Facts ¶ 11; Def. Rule 56.1 ¶ 40; Pl. Rule 56.1 ¶ 40.[5]

---

3. The Plaintiff objects to the Defendant's notation of the Plaintiff's age and health on the ground that "the material cited to support [the] . . . fact[s] cannot be presented in a form that would be admissible in evidence." *See* Pl. Rule 56.1 ¶ 33 (citing F.R.C.P. 56(c)(2)). The Plaintiff argues that such evidence is not relevant to any disputed issue in this case, under Federal Rule of Evidence 401, and that such evidence would be unduly prejudicial under Rule 403. *Id.* The Court disagrees: Rite Aid relies on some of this information to establish that its phone call constituted a "health care message," under 47 C.F.R. § 64.1200(a)(2) (internal quotation marks omitted), and to establish that the call was "made for emergency purposes," such that it is exempt from the TCPA altogether, *see* 47 U.S.C. § 227(b)(1)(A). Although the Court does not ultimately reach the Defendant's emergency purposes argument, it nevertheless finds that this evidence is not irrelevant as a matter of law and not unduly prejudicial.

4. Plaintiff again objects to this fact on the ground that it is not relevant, and thus the evidence supporting it is inadmissible. Pl. Rule 56.1 ¶ 32. Because the fact may be relevant to whether the call qualified as a health care message under 47 C.F.R. § 64.1200(a)(2), and whether it was made for emergency purposes, 47 U.S.C.A. § 227(b)(1)(A), the Court denies the Plaintiff's objection. The fact is otherwise undisputed.

5. It is also undisputed that, in addition to receiving prescriptions from Rite Aid, in 2012 Plaintiff applied for and received a discount card, known as a "wellness+" card. Def. Rule 56.1 ¶ 23; Pl. Rule 56.1 ¶ 23. In exchange for the card, Plaintiff agreed to certain terms and conditions, including that "[b]y using wellness+ . . . [Plaintiff] agree[d] to be marketed to by Rite Aid. Participants can opt-out of communications at any time." Def. Rule 56.1 ¶ 24; Pl. Rule 56.1 ¶ 24. Plaintiff used the card repeatedly at Rite Aid stores from 2012 through 2015. Def. Rule 56.1 ¶ 25; Pl. Rule 56.1 ¶ 25.

Through vendors, Rite Aid HQ made prerecorded flu shot reminder calls to pharmacy patients of, *inter alia*, Rite Aid NY, in the fall of 2013 and again in the fall of 2014. Def. Rule 56.1 ¶ 34; Pl. Rule 56.1 ¶ 34. Rite Aid HQ called only patients who had received a flu shot from a Rite Aid-branded pharmacy the previous year. Def. Rule 56.1 ¶ 35; Pl. Rule 56.1 ¶ 35. Rite Aid instructed vendors making the phone calls to deliver only one flu shot reminder call to each patient, although it indicated that if the call was not answered or resulted in a busy signal, the vendor could attempt a second call. Def. Rule 56.1 ¶ 36; Pl. Rule 56.1 ¶ 36. Rite Aid used a vendor that it designated as a "business associate" of Rite Aid, for purposes of sharing protected information under the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320d, *et seq.* Def. Rule 56.1 ¶¶ 37–38; Pl. Rule 56.1 ¶¶ 37–38. Rite Aid prepared two scripts for the calls: one that alerted the recipient generally to the availability of a flu shot, and one that specifically noted that a particular vaccine was available to patients 65 and older. *See* Zabroske Decl. ¶ 5.

The Plaintiff received such a prerecorded flu shot reminder call. On September 26, 2014, slightly less than a year after Plaintiff received a flu shot from Rite Aid NY, Rite Aid HQ, through its vendor, called Plaintiff on his cell phone with a prerecorded message alerting him to the availability of flu shots for the 2014 season at Rite Aid pharmacies. Def. Rule 56.1 ¶ 39; Pl. Rule 56.1 ¶ 39. The call stated as follows:

> Get your flu shot at Rite Aid today and shield yourself from this season's strains of the flu. Rite Aid now offers patients sixty five and over the Fluzone High Dose vaccine designed for older patients and covered by Medicare Part B. Because our immune systems may need more help as we get older, the Fluzone High Dose vaccine available at Rite Aid may deliver a stronger immune response. Come in today and shield yourself. No appointment necessary and most insurance plans accepted. Vaccines available while supplies last. See your Rite Aid pharmacist for details. Goodbye.

Def. Rule 56.1 ¶ 40; Pl. Rule 56.1 ¶ 40. The Plaintiff only received one call from Rite Aid in connection with its flu shot reminder campaign. *See* Def. Rule 56.1 ¶ 41.[6] Because Plaintiff has an unlimited phone plan, he did not pay any specific additional price for receipt of the single call. Def. Rule 56.1 ¶ 42; Pl. Rule 56.1 ¶ 42. After receiving the call, Plaintiff complained to an unidentified store employee at the Highland Falls, NY location of Rite Aid NY. Pl. Add'l Facts 56.1 ¶ 13. According to Plaintiff, that employee told him that the store had nothing to do with the call. Pl. Add'l Facts ¶ 13; Zani Decl. at 135–36. In addition to the automated call made by Rite Aid, employees at the Highland Falls location made manual calls to specific patients advising them of the availability of flu shots, and other employees at other

---

**6.** The Defendant cites to three separate declarations for the proposition that Rite Aid placed only one automated call to Plaintiff. *See* Def. Rule 56.1 ¶ 41; Zabroske Decl. ¶ 13; Taylor Decl. ¶ 7, Ex. A; Petersen Decl. ¶¶ 2–3, Ex. A. The Plaintiff, in his response, states that he received "three or four" calls from Rite Aid but has no record or recollection of how many prerecorded flu shot reminder calls he received. *See* Pl. Rule 56.1 ¶ 41; *see*

*also* Dkt. No. 67 (in which the Court notes that the Plaintiff has "affirmatively claim[ed] an inability to say for certain how many … robocalls [he received],… [and] will be bound by [this response] going forward"). Because no reasonable jury could find that Defendant made more than one call to Plaintiff based on the evidence in the record, the Court adopts that fact as undisputed.

Rite Aid-branded pharmacies made such manual calls, referring to them as "patient calls to make." *See* Pl. Add'l Facts ¶¶ 20–21. Plaintiff received such a call in 2014. *Id.* ¶ 21.

■ In the same year—2014—Rite Aid advertised the availability of flu shots at Rite Aid-branded pharmacies in multiple ways. Pl. Add'l Facts ¶ 15. The language of such ads was similar to the language in the flu shot call at issue. *Id.* ¶ 16. The flu shot reminder call was itself developed as a tool to encourage customers who had previously received a flu shot from Rite Aid to return the following year. Pl. Add'l Facts ¶¶ 30–34. Further, in private communications, individuals at Rite Aid referred to the calls as "telemarketing" or "marketing," and referred to the list of individuals called as a "marketing list." *Id.* ¶¶ 34–35. Additionally, Rite Aid received complaints related to the flu shot reminder calls in 2013. *Id.* ¶ 42. Reacting to these complaints, as well as a shifting legal landscape in light of new FCC rules governing automated calls, Rite Aid temporarily suspended the program, although it restarted it in 2014. *Id.* ¶¶ 43–46.[7]

## II. Procedural History

On December 23, 2014, the Plaintiff filed an Amended Complaint against Rite Aid HQ for negligent and willful violations of the TCPA in connection with the single prerecorded, automated call Rite Aid made to Plaintiff's cell phone in 2014. *See generally* Am. Compl. On March 25, 2016, after a period of discovery, the Defendant filed the instant motion for summary judgment or, in the alternative, partial summary judgment. *See* Def. Mot. In that motion, the Defendant argues, *inter alia*, that undisputed facts establish that the call in question conveyed a "health care message," as defined in 47 C.F.R. § 64.1200(a)(2) (internal quotation marks omitted), such that the Defendant only needed "prior express consent"—and not "prior express *written* consent"—to make the call. Def. Mot. 2–3. Because it is further undisputed that Plaintiff's provision of his cellular phone number in connection with receiving a flu shot was sufficient to satisfy the "prior express consent" requirement, the Defendant argues that no reasonable jury could find liability. *Id.* For the reasons that follow, the Court agrees.

## III. Legal Background

### A. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

### B. The TCPA

The Court begins with a description of the legal framework governing this litiga-

7. The Defendant also cites, in its Rule 56.1 statement, facts indicating that influenza is a serious disease, that it affects individuals over the age of 65 most severely, and that the Centers for Disease Control have publicly stated that it is important for pharmacies to remind their patients to get flu shots. *See* Def. Rule 56.1 ¶¶ 5–22. The Plaintiff objects that such evidence is not admissible, because it is not relevant and would be unduly prejudicial. *See* Pl. Rule 56.1 St. ¶¶ 5–22. The Court disagrees. The evidence may be relevant to whether the call qualifies as a health care message under 47 C.F.R. § 64.1200(a)(2), and whether it was made for emergency purposes, 47 U.S.C.A. § 227(b)(1)(A), and is not unduly prejudicial.

tion: the TCPA and its relevant implementing regulations.

The TCPA makes it unlawful for any "person within the United States" to, *inter alia*, "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or . . . artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(A)(iii).[8] The Act authorizes the Federal Communications Commission ("FCC") to "prescribe regulations to implement the [Act's] requirements" subject to various conditions. 47 U.S.C. § 227(b)(2).

■ As the text of the TCPA suggests, there are three circumstances in which a prerecorded, automated call may lawfully be made to a cellular phone. First, if the call is made for "emergency purposes," it is not subject to the TCPA's restrictions. 47 U.S.C. § 227(b)(A)(iii). The FCC has defined "emergency purposes" to mean "calls made necessary in any situation affecting the health and safety of consumers." 47 C.F.R. § 64.1200(f)(4). Second, the FCC may exempt certain calls to cell phones from the restrictions under the Act, provided that the calls "are not charged to the called party." 47 U.S.C. § 227(b)(2)(C). Finally, a call is not unlawful if made "with the prior express consent of the called party." 47 U.S.C. § 227(b)(A)(iii). As the FCC has stated, "the TCPA is silent on the issue of what form of express consent—oral, written, or some other kind—is required for calls that use an automatic telephone dialing system or prerecorded voice to deliver a telemarketing message." *In the Matter of Rules & Regulations Implementing the Tel Consumer Prot. Act of 1991*, 27 F.C.C. Red.

1830, 1838 ¶ 21 (Feb. 15, 2012) (hereafter "2012 Order").

Prior to 2013, FCC implementing regulations required only "prior express consent" for automated, prerecorded calls to cell phones, a requirement which the FCC interpreted as satisfied when a "person[ ] . . . knowingly release[s] their phone number [to the caller] . . . absent instructions to the contrary." *See* 2012 Order at 1833 ¶ 7 n. 20 (citing *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Red. 8752, 8769 ¶ 31 (Oct. 16, 1992) ("[T]elemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached.")). There is no dispute in this case that the Defendant had the prior express consent of the Plaintiff to make the single call at issue, although the parties dispute whether the Defendant had the "prior express written consent" of Plaintiff, as that requirement is defined under FCC regulations. 47 C.F.R. § 64.1200(f)(8); *see generally* Pl. Opp.; *id.* at 20–21; Reply at 7.

In 2012, the FCC, seeking to make the TCPA's implementing regulations more consistent with the Federal Trade Commission's ("FTC") regulations of telemarketing communications pursuant to the Federal Trade Commission Act, 15 U.S.C. §§ 41–58, announced a new rule altering the consent requirements for automated telemarketing calls under the TCPA. *See* 2012 Order at 1831 ¶ 1; *see generally id.*; 47 C.F.R. § 64.1200 (codifying the rules). These new rules took effect on October 16, 2013. *See* 47 C.F.R. § 64.1200. In its 2013 regulation, the FCC distinguished between two categories of automated or prerecorded calls: those that "include[ ] or introduce]] an advertisement or constitute[ ] telemarketing," 47 C.F.R. § 64.1200(a)(2),

---

**8.** Such calls are not unlawful if "made solely to collect a debt owed to or guaranteed by the

United States," an exception not at issue in this case. *Id.*

and those that are, instead, "information-al," *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Red. 7961, 7971 ¶ 9 (July 18, 2015) (hereafter, "2015 Order") (describing the 2013 rules).[9] Under the 2013 rules, prerecorded or automated informational calls to a cellular number continued to require prior express consent, as defined in previous FCC orders. 47 C.F.R. § 64.1200(a)(1). In contrast, automated or prerecorded calls containing advertisements or telemarketing could be made only with the "prior express *written* consent of the called party." *Id.* § 64.1200(a)(2) (emphasis added). The regulation defines "prior express written consent" as follows:

> The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

47 C.F.R. § 64.1200(f)(8).[10] The parties refer to this heightened consent requirement for certain calls under the 2013 rule as the "Telemarketing Rule," and the Court adopts that terminology.

At the time that it created the Telemarketing Rule, the FCC also established certain exceptions to that rule, specifically, and to the TCPA's prior express consent requirement, generally. In particular, the FCC created an exemption from any consent requirement for automated or prerecorded calls made to residential lines that "[d]eliver[ ] a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate,' as those terms are defined in the HIPAA Privacy Rule, 45 C.F.R [§ ] 160.103." 47 C.F.R. § 64.1200(a)(3)(v). The FCC explained its reasoning for creating this exemption by, *inter alia*, citing the FTC's reasons for creating a textually identical exception in its Telemarketing Sales Rule ("TSR"). 2012 Order at 1853–54 ¶¶ 59–61. The FTC's Telemarketing Sales Rule applies to "prerecorded message[s]" that constitute telemarketing, as defined in 16 C.F.R. § 310.2(gg). *See* 16 C.F.R. § 310.4(b)(1)(v) ("It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in ... [i]nitiating any outbound telephone call that delivers a prerecorded message"); 16

---

**9.** Under the rule, "[t]he term advertisement means any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200 (f)(1). "The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* § (f)(12).

**10.** Such consent also contains the following requirements:

> (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.
> (ii) The term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.
> *Id.*

C.F.R. § 310.2(gg) (defining telemarketing as, *inter alia*, "a plan, program, or campaign which is conducted to induce the purchase of goods or services"); *see also* FTC, *Complying with the Telemarketing Sales Rule*, available at https://www.ftc.gov/tips-advice/business-center/guidance/complying-telemarketing-sales-rule#comply (last visited Mar. 28, 2017) (hereafter "FTC Guidance") (explaining that "calls that deliver purely 'informational' prerecorded messages" are not subject to the rule). In 2008, the FTC created an exemption from the Telemarketing Sales Rule for calls that deliver "a prerecorded healthcare message made by, or on behalf of, a covered entity or its business associate, as those terms are defined in the HIPAA Privacy Rule, 45 C.F.R. [§ ] 160.103." 16 C.F.R. § 310.4(b)(1)(v)(D); *see also* FTC Guidance, *supra* (stating that the "healthcare message exemption" "expressly exempt[s]" "calls that would otherwise be prohibited by the [Telemarketing Sales Rule]"). In adopting a nearly identical exemption in its own 2012 Order, the FCC observed that the FTC created its exemption because, *inter alia*, such calls were already extensively regulated by HIPAA, and that such a narrow exception would be unlikely to tread greatly on consumer's privacy rights. *See* 2012 Order at 1853–54 ¶¶ 59–61. The FCC noted, in citing to the FTC's parallel rule, that adopting the same rule as the FTC was particularly important as "both agencies have jurisdiction over telemarketing," 2012 Order at 1836 ¶ 15, and that Congress had repeatedly indicated that it was a "statutory goal" of the TCPA to "maximi[ze] consistency with the FTC's telemarketing rules," *id.* at 1837 ¶ 18.

In addition to creating an exemption from any consent requirement for health care messages to residential lines, the FCC also created an exception from its prior express *written* consent requirement for health care messages made to cellular

lines. The FCC codified that exception as follows:

> No person or entity may:
>
> * * *
>
> (2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call is made by or on behalf of a tax-exempt nonprofit organization, *or a call that delivers a "health care" message made by, or on behalf of a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.*

47 C.F.R. § 64.1200(a)(2) (emphasis added). The parties refer to this exception to the Telemarketing Rule as the "Health Care Rule," and the Court adopts that nomenclature. Although the most natural reading of § 64.1200(a)(2) might suggest that calls delivering "health care" messages to cellular phones are exempt from either consent requirement under the TCPA, *see Jackson v. Safeway, Inc.*, No. 15-CV-04419 (JSC), 2016 WL 5907917, at *7 n.10 (N.D. Cal. Oct. 11, 2016) ("Under the plain language of [the provision], it appears that a [health care message] is not subject to *any* consent requirement, written or otherwise."), the FCC has clarified that the Health Care Rule merely "exempt[s] [such calls] from the written consent requirement," *Consumer & Governmental Aff. Bureau Seeks Comment on Petition for Expedited Declaratory Ruling & Exemption from Am. Ass'n of Healthcare Admin. Mgmt.*, 29 F.C.C. Red. 15267,

15267 n.7 (Dec. 17, 2014) (hereafter *"Consumer & Governmental Affairs Bureau"*). Neither party challenges that determination.

In 2015, the FCC created an exemption from the prior express consent requirement for certain health care calls to cellular phones. *See* 2015 Order at 8031–32 ¶¶ 146–47. This exemption, as noted, went further than the Health Care Rule, in that it exempted such calls from the prior express consent requirement (rather than simply the prior express written consent requirement). *Id.* at 8030 ¶ 143. The FCC also added a number of specific, textual restrictions that it did not explicitly include in the 2013 Health Care Rule or the exemption for calls made to residential lines. First, the exemption was limited to calls "for which there is exigency and that have a healthcare treatment purpose." *Id.* at 8031–32 ¶¶ 146–47. Second, the FCC stated that "voice calls and text messages [under the rule] are strictly limited to the [health care] purposes [specifically enumerated in the rule]; must not include any telemarketing, solicitation, or advertising; may not include accounting, billing, debt-collection, or other financial content; and must comply with HIPAA privacy rules." *Id.* at 8032 ¶ 147; *see also id.* at 8031 ¶ 146 ("We ... grant the exemption for calls subject to HIPAA, but limit this exemption by excluding any calls contained therein that include telemarketing, solicitation, or advertising content, or which include accounting, billing, debt-collection, or other financial content.").

With this legal framework in mind, the Court turns to the Defendant's arguments in support of summary judgment.

## IV. Discussion

Rite Aid argues that the single call it made to the Plaintiff's cellular phone in 2014 cannot create liability under the TCPA and the FCC's implementing regulations for a number of reasons. First, Rite Aid argues that, based on undisputed facts in the record, its call was subject to the Health Care Rule, and not the Telemarketing Rule. *See* Def. Mot. at 9. As it is further undisputed that Rite Aid had the prior express consent of the Plaintiff in placing the call, Rite Aid argues that it is not liable under the TCPA.

In addition to relying on the Health Care Rule, Rite Aid argues, second, that its call qualified for the exemption created by the FCC in 2015. *Id.* at 14. Third, it argues that, even if the call was subject to the Telemarketing Rule, Rite Aid substantially complied with the prior express written consent requirement and that such compliance is sufficient under relevant case-law. *Id.* at 18; Reply at 8. Fourth, Rite Aid argues that the call was made for emergency purposes under the TCPA and therefore fully exempt from its provisions. *Id.* at 20. Fifth, Rite Aid argues that, to the degree the Court were to find it ambiguous whether the Telemarketing or Health Care Rule applied to the 2014 call, the Due Process Clause precludes liability. *See id.* at 18–19. Finally, in its reply brief, Rite Aid argues for the first time that the Plaintiff lacks standing to pursue this claim. *See* Reply at 8 (citing *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 1549, 194 L.Ed.2d 635 (2016), *as revised* (May 24, 2016) (holding that a plaintiff may not "allege a bare procedural violation" of a statute "divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III")). Should the Court find Rite Aid is not entitled to summary judgment on the Plaintiff's claim, Rite Aid also moves for partial summary judgment on the question of whether it "willfully or knowingly" violated the TCPA with its 2014 call. *See* Def. Mot. at 22–23 (citing 47 U.S.C. § 227(b)(3) (stating that, if a defendant "knowingly or willfully" violates the TCPA, "the court may, in its

discretion, increase the amount of the award [otherwise $500] to an amount equal to not more than 3 times the amount")).

The Court concludes that, based on undisputed facts in the record, Rite Aid's phone call to Plaintiff was subject to the less demanding Health Care Rule, and not the Telemarketing Rule, which would have required prior express *written* consent. *See City of Waterbury*, 542 F.3d at 35. Because it is undisputed that the requirements for the Health Care Rule were met, the Court does not reach Rite Aid's additional arguments.

### A. Standing

▆ The Court first addresses Rite Aid's argument that the Plaintiff lacks standing to bring this suit, on the ground that he has suffered nothing more than a "bare procedural violation, divorced from any concrete harm." *Spokeo*, 136 S.Ct. at 1549. Although Rite Aid raises its standing argument only in reply, the Court must address it as it goes to the scope of the Court's jurisdiction under Article III. *See Cent. Sts. Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). In *Leyse v. Lifetime Ent. Servs., LLC*, the Second Circuit held that, because a plaintiff received a "prerecorded voicemail message" to which he listened, and which he alleged was sent in violation of the TCPA, he demonstrated "more than a bare [procedural] violation [of the TCPA] and satisfie[d] the concrete-injury requirement for standing." Nos. 16–1133–cv, 16–1425–cv, 2017 WL 659894, at *1 (2d Cir. Feb. 15, 2017) (summary order); *see also id.* (noting that, "[i]nsofar as the TCPA protects consumers from certain telephonic contacts,... [the plaintiff's] receipt of such an alleged contact in the way described demonstrates more than a bare violation and satisfies the concrete-injury requirement for standing"). This Second Circuit authority indicates that the Plain-

tiff has standing in this case to pursue his claim, and the Court sees no basis to conclude otherwise. The Court thus turns to the merits of the dispute.

### B. The Health Care Rule

As noted, to qualify for the less demanding consent requirements of the Health Care Rule, an automated call must "deliver[ ] a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate.'" 47 C.F.R. § 64.1200(a)(2). Rite Aid argues that, based on undisputed facts in the record, its phone call qualified for the Health Care Rule. The Plaintiff, in response, argues that material questions of fact preclude the Court from finding that the call delivered a "health care message." Pl. Opp. at 9. In particular, the Plaintiff argues that a health care message may not contain "advertisements" or "solicitations," and that a reasonable jury could find, based on the facts in the record, that Rite Aid's call to Plaintiff was indeed an advertisement or telemarketing message. *See* Pl. Opp. at 9, 16.

As an initial matter, the Court notes that both parties agree that there are few judicial opinions interpreting the text and scope of the Health Care Rule. *See* Def. Mot. at 13; *see generally* Pl. Opp. In resolving disputed questions as to the meaning of the Health Care Rule, the Court looks to the text of relevant regulations, to relevant statements by the FCC, HHS, and the FTC interpreting the regulatory text at issue or analogous exemptions, *see Christensen v. Harris Cty.*, 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) ("In *Auer[ v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) ], we held that an agency's interpretation of its own regulation is entitled to deference. But *Auer* deference is warranted only when the language of the regulation is ambiguous." (internal citation omitted)),

and to the limited case-law addressing the parties' arguments, *see, e.g., Jackson*, 2016 WL 5907917.

Assessing these sources, and for the reasons that follow, the Court concludes that the undisputed facts in the record establish that Rite Aid's single call to Plaintiff was sent by or on behalf of a covered entity or its business associate and conveyed a health care message to its recipient. The Court further concludes that, because the Health Care Rule is an exception to the Telemarketing Rule, evidence that the calls were sent for a marketing purpose is immaterial to this assessment. The Court thus holds that Rite Aid's call to Plaintiff qualified for the Health Care Rule as a matter of law.

### 1. The Call Was Sent By or on Behalf of a Covered Entity

Under the FCC's 2013 regulation, a call is subject to the Health Care Rule (and thus may be made with "prior express consent") if it "delivers a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate,' as those terms are defined in the HIPAA Privacy Rule, 45 CFR [§ ] 160.103." 47 C.F.R. § 64.1200(a)(2). The first question for the Court, then, is whether the call was "made by, or on behalf of, a 'covered entity' or its 'business associate.' " *Id.*

As an initial matter, the Plaintiff does not appear to specifically argue that the call was not made "by, *or on behalf of*, a 'covered entity' *or its 'business associate'*" in his opposition brief. *Id.* (emphases added); *see generally* Pl. Opp.

■ In any event, undisputed facts in the record establish both that Rite Aid HQ is a "business associate" of Rite Aid's pharmacies, and that the calls in question were made on behalf of those pharmacies. First, undisputed facts demonstrate that Rite Aid HQ is a "business associate" of Rite Aid NY, itself inarguably a health

care provider. HHS implementing regulations define a "business associate" to include, *inter alia*, a "person who .... [p]rovides ... legal, actuarial, accounting, consulting, data aggregation ..., management, administrative, accreditation, or financial services to or for [a] covered entity ... where the provision of the service involves the disclosure of protected health information." 45 C.F.R. § 160.103. Undisputed facts establish that Rite Aid HQ, an entity whose purpose, Plaintiff argues, is to "help [Rite Aid's] branded pharmacies to make sales," Pl. Opp. at 2, is a business associate of Rite Aid's pharmacies that receives protected information from those pharmacies. *See* Def. Rule 56.1 ¶ 27; Pl. Rule 56.1 ¶ 27 (stating that Plaintiff gave Rite Aid NY personal information when he received his first prescription, through which Rite Aid HQ created a profile of Plaintiff); Zabroske Decl. ¶ 1 (noting that Zabroske is senior director of marketing at Rite Aid HQ and that he has "access to information stored on Rite Aid's internal systems, which includes patient information"); Palmer Decl. ¶¶ 6–9 (affirming that Rite Aid has designated itself and its pharmacy divisions "affiliated covered entities" under relevant HIPAA regulations (citing 45 C.F.R. § 164.105(b)(2)(i)(A) (stating, *inter alia*, that "[l]egally separate covered entities may designate themselves (including any health care component of such covered entity) as a single affiliated covered entity, for purposes of this part, if all of the covered entities designated are under common ownership or control."))). Further, as Rite Aid points out, a business associate may "conduct standard transactions on ... behalf" of a health care provider, and in doing so, may "use [the provider's] [National Provider Identifier]." 45 C.F.R. § 162.410(a)(5).

■ Second, no reasonable jury could conclude from the record that the calls

were not sent "on behalf of" Rite Aid's pharmacies, even if sent by Rite Aid HQ. The FCC's 2012 Order does not include a definition of "on behalf of." Given this, the Court may provide the term its ordinary meaning. *See United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016), *cert. denied*, No. 16-639, —— U.S. ——, 137 S.Ct. 1330, 197 L.Ed.2d 517, 2017 WL 1040879 (U.S. Mar. 20, 2017); *Brown v. N.Y.C. Dep't of Educ.*, 755 F.3d 154, 165 (2d Cir. 2014). The Merriam Webster Dictionary defines "on behalf of" as "for the benefit of" or "as a representative of" another party. *See On Behalf of Someone*, Merriam Webster On-Line, *available at https://www.merriam-webster.com/dictionary/onbehalfof* (Last Visited Mar. 28, 2017). It is undisputed that Rite Aid HQ and Rite Aid NY are affiliated entities owned by the same company, Rite Aid Corp., *see* Pl. Add'l Rule 56.1 St. ¶ 1; Palmer Decl. ¶ 6, that Rite Aid HQ received Plaintiff's phone number as well as information that Plaintiff had previously received a prescription flu shot from Rite Aid NY, Def. Rule 56.1 ¶ 27; Pl. Rule 56.1 ¶ 27; Zabroske Decl. ¶ 1 (noting that Rite Aid HQ has access to such information), and that the calls in question were sent to encourage customers to patronize, *inter alia*, Rite Aid NY, Pl. Add'l Facts ¶¶ 14, 30–34. As Plaintiff indicates, "Rite Aid [HQ]'s business is to help [Rite Aid's] branded pharmacies to make sales," and Plaintiff argues that that was the purpose of the calls in question. Pl. Opp. at 2.

█ In short, undisputed facts establish that the call was "made by, or on behalf of, a 'covered entity' or its 'business associate,'" and the Plaintiff marshals no serious argument to the contrary. 47 C.F.R. § 64.1200(a)(2).[11] Having made this determination, the Court turns to the question of whether the calls conveyed a "health care message" so as to qualify for the Health Care Rule. 47 C.F.R. § 64.1200(a)(2) (internal quotation marks omitted).

## 2. Rite Aid's Flu Shot Reminder Calls Conveyed a "Health Care" Message As a Matter of Law

As noted, to qualify for the relaxed consent requirements of the Health Care Rule, a call must deliver a '"health care' message" as that term is defined under HIPAA regulations. 47 C.F.R. § 64.1200(a)(2). The Court thus begins with an analysis of this regulatory requirement, before addressing whether, on the undisputed facts in this record, Defendant's message qualified.

### a. The Meaning of "Health Care Message"

Under HHS regulations implementing HIPAA, health care is defined broadly to

---

11. Plaintiff stated in his declaration that he went to the Highland Falls, NY, location of Rite Aid NY and complained about the flu shot reminder call, and was told by an employee that she had nothing to do with it. Zani Decl. at 135–36. To the degree that Plaintiff were to attempt to rely on this fact as relevant to whether the calls were sent on behalf of Rite Aid NY and whether Rite Aid HQ is a business associate of Rite Aid NY, the fact would not be material. Even assuming this statement would not be hearsay, *see Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) ("Only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." (quoting *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (alteration omitted)), no reasonable jury could rely on it to find that the calls were not sent on behalf of Rite Aid NY (the larger company that owned the Highland falls location). The declaration does not identify the employee's name or position or in any way indicate she had personal knowledge of the calls or the process through which they were made, and in any case, Defendant does not argue—nor need it—that the local pharmacy personally made the calls or designed the flu shot reminder campaign itself.

include "care, services, or supplies related to the health of an individual." 45 C.F.R. § 160.103. In particular, "[h]ealth care includes, but is not limited to:"

(1) Preventive, diagnostic, therapeutic, rehabilitative, maintenance, or palliative care, and counseling, service, assessment, or procedure with respect to the physical or mental condition, or functional status, of an individual or that affects the structure or function of the body; and

(2) Sale or dispensing of a drug, device, equipment, or other item in accordance with a prescription.

*Id.* Reading the text of the Health Care Rule in light of HHS regulations, it follows that, to constitute a health care message, a call must concern or relate to the provision of "health care" as defined under § 160.103.

Relevant statements by the FCC and the FTC explicate, narrow, and clarify, this requirement. The FCC has provided no exhaustive definition of what constitutes a "health care message." It has, however, described such calls as placed by or on behalf of "the consumer's health care provider to the consumer ... concern[ing] the consumers' health." 2012 Order at 1855 ¶ 63. As to what sort of messages would "concern ... the consumer's health," the FCC has again offered no comprehensive list. *Id.* It has suggested, however, that "immunization reminders" and calls " 'pushing' flu vaccines" may convey health care messages, at least under certain circumstances. *Id.; see also id.* n.190 (noting that, as to flu shot reminder calls, "HIPAA defines the limited groups that would be permitted to make such calls"); *see also Latner v. Mount Sinai Health System, Inc.*, 16–cv–683 (AKH), at 5 (S.D.N.Y. Dec. 14, 2016) (Dkt. No. 59) (agreeing with this understanding of the FCC's 2012 Order). In its 2015 Order, the FCC further clarified that "prescription notifications" would

likely constitute calls made with "a health-care treatment purpose," a category of call arguably narrower than, but included in, the broader category of "health care message." *See* 2015 Order at 8031 ¶ 146.

The FTC has also offered guidance on what constitutes a "health care message" under its textually identical rule. The FTC has stated that three categories of calls convey health care messages: (1) "calls to describe a health-related product or service that is provided by, or included in a plan of benefits of, the covered entity making the communication," (2) "calls for treatment of the individual," and (3) "calls for case management or care coordination for the individual, or to direct or recommend alternate treatments, therapies, health care providers, or settings of care to the individual." FTC Guidance, *supra.* As to what constitutes a "health-related product or service," the FTC has emphasized that "[p]rerecorded messages involving products or services not prescribed by a doctor or other healthcare provider as part of a plan of treatment, and therefore not within the healthcare exemption would include ... [*inter alia* ] vitamins, minerals ... gym or health club memberships, [or] weight loss products." *Id.* In contrast, the FTC has observed that "some examples of exempt healthcare-related HIPAA calls [include] prerecorded messages calls made by or on behalf of a ... pharmacy to provide prescription refill reminders" and calls by a "medical provider to provide medical appointment or other reminders (for example, availability of *flu shots* . . .)." *Id.* (emphasis added).

Limited case law further illustrates, and applies, the Health Care Rule. At least one district court to assess whether a flu shot reminder call constituted a "health care message" concluded that it did for two reasons. *See Jackson*, 2016 WL 5907917, at *8–9. First, the court in *Jackson* held, at

summary judgment, that a flu shot call concerned the provision of "care, services, or supplies related to the health of an individual," and thus that a call alerting a specific individual who had received a flu shot the previous year at the defendant's pharmacy to the availability of next year's prescription conveyed a health care message as a matter of law under the Health Care Rule. *See Jackson*, 2016 WL 5907917, at *8 (quoting 45 C.F.R. § 160.103). Second, the *Jackson* court concluded that the call in question was a health care message because it specifically concerned the provision of medication to an individual "in accordance with a prescription." *Id.* at *9 (quoting 45 C.F.R. § 160.103). The only district court in this Circuit to thus far assess whether flu shot reminder calls convey health care messages incorporated, and agreed with, *Jackson's* reasoning in dismissing a claim under the TCPA under Federal Rule of Civil Procedure 12(c). *See Latner*, 16–cv–683 (AKH), at 5.

■ Synthesizing the above statutory and regulatory text and regulatory guidance, the Court holds that at least three factors may be material to whether a call conveys a health care message as a matter of law. First, if such a call concerns a product or service that is inarguably health-related, as narrowly defined by the FTC, it likely conveys a health care message. Such category would include the administration of medication "prescribed by a doctor or other healthcare provider," but would not include any product simply because it may be construed to benefit a consumer's health. FTC Guidance, *supra.* Second, if such a call is made by or on behalf of a health care provider to a patient with whom she has an established health care treatment relationship, that too is material to application of the rule. *See* 2012 Order at 1855 ¶ 63 (describing such calls as placed by or on behalf of "the consumer's health care provider to the consumer ... concern[ing] the consumers'

health"). Finally, if the call concerns the individual health care needs of the patient recipient, that too is material. *See id.* The operative question as to this last factor would be whether a nexus exists between the subject matter of the call and the established health care needs of its recipient.

The Court need not decide whether each of these three factors must be present for a call to convey a health care message. That is because, as the Court next explains, the undisputed facts in the record establish that each factor is applicable to Rite Aid's flu shot reminder calls, rendering them health care messages as a matter of law.

**b. Undisputed Facts Establish that Rite Aid's Flu Shot Reminder Calls Conveyed Health Care Messages**

■ The undisputed facts establish that Rite Aid's flu shot reminder calls, first, concerned the availability of a prescription medication at Rite Aid pharmacies, second, were made within an established treatment relationship, and third, concerned the individual health care needs of the calls' recipients.

First, it is undisputed that the calls conveyed to their recipients information about the availability of a prescription medication administered at Rite Aid pharmacies. *See* Def. Rule 56.1 ¶¶ 2–4, 40; Pl. Rule 56.1 ¶¶ 2–4, 40. The administration of medicine through a prescription plainly constitutes a health-related product under the narrowest definition of the Health Care Rule. *See* 45 C.F.R. § 160.103 (defining "health care" to include the "[s]ale or dispensing of a drug ... in accordance with a prescription"); 2012 Order at 1855 ¶ 63 (indicating that "immunization reminders" and calls " 'pushing' flu vaccines" may convey health care messages under certain circum-

stances); FTC Guidance, *supra* (noting that "products or services not prescribed by a doctor or other healthcare provider" would not qualify as health-related, but indicating that calls concerning the "availability of flu shots" would); *Jackson*, 2016 WL 5907917, at *8 (finding that a flu shot reminder call conveyed a health care message).

Second, it is undisputed that the calls not only concerned the provision of health care, but were sent only to patients of Rite Aid pharmacies who had previously filled prescriptions at those pharmacies. Def. Rule 56.1 ¶ 35; Pl. Rule 56.1 ¶ 35; *see also* Def. Rule 56.1 ¶ 29; Pl. Rule 56.1 ¶ 29 (noting that Plaintiff signed a Notice of Privacy Practices each time he filled a prescription at Rite Aid which stated "[Rite Aid] may contact [Plaintiff] to provide refill reminders or information about treatment alternatives or other health related benefits and services that may be of interest"). The calls were not, then, sent to the general public; they were, instead, made within the confines of an established health care treatment relationship.

Finally, undisputed facts establish that the calls specifically related to the individual health care needs of their recipients. It is undisputed that Rite Aid only sent the flu shot reminder calls to patients of Rite Aid pharmacies who had received a prescription flu shot the previous year from those pharmacies. Def. Rule 56.1 ¶ 35; Pl. Rule 56.1 ¶ 35. The calls thus alerted those patients to the availability of a medication treating the precise medical issue for which they had previously sought care. In this respect, the calls did more than simply alert their recipients to the availability of a "health-related product or service" available at Rite Aid, a category of message the FTC has suggested may itself qualify for the Health Care Rule. *See* FTC Guidance, *supra*. More narrowly, the calls "concerned the ... health [care needs]" of

their individual recipients. 2012 Order at 1855 ¶ 63. Rite Aid's uncontroverted evidence that the flu is a serious disease, and particularly dangerous for individuals over the age of 65, further underscores this conclusion. *See* Def. Rule 56.1 ¶¶ 5–22, 33.

In short, undisputed facts establish, first, that Rite Aid's calls alerted patients of Rite Aid pharmacies to the availability of a prescription medication offered at those pharmacies, second, that those calls were made in the context of an established treatment relationship, and third, that the calls concerned an established medical need of the individual recipients of the calls. Whether or not such facts are necessary for a call to constitute a health care message under the Health Care Rule, they are sufficient.

### c. Plaintiff Cites No Material Fact to Suggest that the Call Did Not Convey a Health Care Message as a Matter of Law

The Plaintiff, in opposing Rite Aid's motion for summary judgment, cites to two facts he claims are material and that preclude the Court from granting summary judgment. First, he observes that Rite Aid did not individualize the text of the messages it sent to hundreds of thousands of individuals, but instead largely reproduced the generic text it used in advertisements in other media. Pl. Opp. at 12–16, 18–20. Second, the Plaintiff points to evidence in the record that Rite Aid made its flu shot reminder calls to market flu shots and increase revenue. *See* Pl. Opp. at 11. The Court addresses the latter contention, *infra*, and concludes that, because the Health Care Rule is an exception to the Telemarketing Rule, Plaintiff's evidence of marketing purpose is not material to whether the call qualified for that exception. *See infra* IV.B.3. As to the Plaintiff's first contention, that the lack of individualization in the text of the messages creates a material

question of fact whether the calls qualified for the Health Care Rule, the Court disagrees. Under the law governing this case, no reasonable jury could find that fact material to this inquiry.

Plaintiff argues that the lack of individualization in the text of Rite Aid's flu shot reminder calls is material for three reasons: First, he argues that it is relevant to whether the calls in question "related to the health of *an individual*" as required under HHS's definition of "health care." *See* 45 C.F.R. § 160.103 (emphasis added). Second, he argues that FCC authority suggests that a call must contain "personalized health information" as that term is defined under HIPAA to qualify as a health care message. Pl. Opp. at 18–20. Finally, he argues that the generic nature of the flu shot reminder calls' text establishes that Rite Aid's calls were similar to faxes the FCC found did not convey health care messages in a recent decision, *In the Matter of Rules and Regs. Implementing the TCP A of 1991 (Petition of Kohll's Pharmacy & Homecare, Inc.)*, CG Dkt. No. 02-278, 2016 WL 7410747 (F.C.C. Dec. 21, 2016) (hereafter "*Kohll's*"). The Court addresses each argument in turn.

### i. Whether the Calls Were "Related to the Health of an Individual"

█ As to Plaintiff's first argument, while it is true that, to constitute health care, the provision of goods or services must "relate[ ] to the health of an individual," 45 C.F.R. § 160.103, Plaintiff is incorrect that this text requires that health care be *individualized*. HHS, in explicating the meaning of "health care" under HIPAA, stated in 2000 that it "[did] not intend that a manufacturer of supplies that are generic and not customized or otherwise specifically designed for particular individuals, e.g., ace bandages for a hospital, is a health care provider. Such a manufacturer is not providing 'health care' as defined in the rule and is therefore not a covered entity." *Standards for Privacy of Individually Identifiable Health Information*, 65 Fed. Reg. 82462, 82568 (Dec. 28, 2000). In suggesting that generic manufacturers would not be providing health care to an individual, however, HHS did not assert that health care must be individualized (i.e. that the same health care message or product could not be delivered to numerous patients and still qualify as health care); it suggested only that generic manufacturers, who would have no relationship with any individual patient, would not come under the HIPAA regulatory framework. As noted, the undisputed facts establish that Rite Aid only made calls to individuals who had received prescription flu shots at Rite Aid pharmacies. *See* Def. Rule 56.1 ¶ 35; Pl. Rule 56.1 ¶ 35. The calls thus did not need to be individualized to concern the provision of health care to these specific individuals.

### ii. Whether the Calls were "Subject to HIPAA."

█ Plaintiff's second argument similarly fails. Plaintiff argues that the lack of individualization in the calls is material because, to qualify as a health care message, a call must contain "protected health information" as that term is defined under HIPAA regulations. Pl. Opp. at 18–20 (citing 42 U.S.C. § 1320d(4) (defining "health information" to include "any information ... created or received by a health care provider" that "relates to ... the past, present, or future payment for the provision of health care to an individual"). The Plaintiff notes that the FCC has referred to the health care exemption for calls to residential lines as exempting calls "subject to HIPAA," and thus argues that, because HIPAA governs the dissemination of protected health information, the Court should interpret the Health Care Rule to require that a call contain such information to qualify. Pl. Opp. at 19 (citing 2012 Order at 1855 ¶ 63). Not so.

First, to the degree that the FCC has addressed the inclusion of personalized information in automated, prerecorded health care messages sent to patients, it has suggested not that such information is required, but that is not necessary and may be discouraged. *See* 2015 Order at 8031 ¶ 146 (first noting that "HIPAA privacy rules shall control the content of the informational message *where applicable*, such as where the message attempts to relate information of a sensitive or personal nature," before noting that "as one commentator cautions[,] 'the information provided in these exempted voice calls and texts must not be of such a personal nature that it would violate the privacy' of the patient if, for example, another person received the message" (emphasis added)).

Second, even assuming a call must be "subject to HIPAA" to qualify for the Health Care Rule—a requirement that does not appear in the text of that rule—the Plaintiff is incorrect that the call in this case would not qualify. That is because Rite Aid made its flu shot reminder calls ' using contact information provided by medical patients of Rite Aid's pharmacies, who provided those numbers when they received prescription medication. *See* Def. Rule 56.1 ¶ 31; Pl. Rule 56.1 ¶ 31; *see also* Zabroske Decl. ¶ 1; *id.* Ex. C (including Rite Aid's notice of privacy practices, which Plaintiff signed in receiving his prescription flu shot, Def. Rule 56.1 ¶ 29; Pl. Rule 56.1 ¶ 29, which explains in what way

patient's protected health information provided to Rite Aid pharmacies may be shared and used); Dkt. No. 104 at 10 (in which, in his reply brief in support of his motion for class certification, Plaintiff responds to Rite Aid's argument that certification could lead to HIPAA violations by pointing out that "Rite Aid pharmacies already disclosed the class members' contact information to [Rite Aid HQ]"); *see also Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1125–26 (11th Cir. 2014) (observing that a patient's wireless number was "health information" under HIPAA); *Love v. Med. Coll. of Wis.*, No. 15-CV-650 (LSA), 2016 WL 3064095, at *2 (E.D. Wis. May 31, 2016) (noting that "[h]ealth information is not individually identifiable [only] if it does not contain a patient's name, address, dates (except year) directly related to an individual, *contact information*, personally identifiable number such as a social security number or medical record number, photograph, or 'any other unique identifying number, characteristic, or code'" (quoting 45 C.F.R. § 164.514(b)(2)) (emphasis added)). In short, the fact that the text of a call does not contain protected health information does not indicate that the call is not "subject to HIPAA": as here, HIPAA may regulate the sharing of information that produced, and allowed that call. *See* 2012 Order at 1854 ¶ 61 (noting that "HIPAA regulations cover all communications regarding protected health information and all means of communication regarding such information.").[12] Even assuming a call

---

12. The Plaintiff, in his statement of additional facts, observes that, in the deposition of Richard Mohall, Senior Director of Field Clinical Services at Rite Aid HQ, *see* Mohall Decl. ¶ 1, Mohall notes as follows: First, he agrees that, "[w]ith respect to Rite Aid's flu shot messages, part of [his] responsibilities is to ensure that they comply with HIPAA." Mohall Dep. At 22. He then agrees that, as to "radio and newspaper messages ... they're not subject to HIPAA because they don't contain any protected health information." *Id.* Next, asked "how about a telephone call that referenced the availability of the flu shot," Mohall responds: "Again, there's no protected health information involved in that call." *Id.* at 23. Asked whether the call is "subject to HIPAA," Mohall answers, "I don't believe so, no." *Id.* As noted, the Health Care Rule does not require a message to contain protected health information in order to qualify. In any case, Mohall's response to the question asked is not

must be "subject to HIPAA" to convey a health care message, Plaintiff is incorrect in suggesting that the generic nature of the text of Rite Aid's flu shot reminder calls is material to whether such calls qualify for the Health Care Rule.

### iii. Whether *Kohll's* Establishes that the Calls Did not Convey Health Care Messages

Finally, the Plaintiff argues that a recent decision by the FCC, *Kohll's*, 2016 WL 7410747, affirms that the calls in this case did not qualify for the Health Care Rule. A review of that decision suggests otherwise.

In *Kohll's*, the petitioner sought a declaratory ruling that certain faxes it sent to various corporations alerting them to the availability of flu shots did not contain advertisements under the TCPA, and were purely informational. *See id.* at *1. The petitioner also asked that, should the FCC conclude otherwise, it exempt the faxes from relevant consent requirements because they conveyed health care messages. *See id.* The FCC denied the request, finding, first, that the faxes contained advertisements and were not purely informational, *see id.* at *3–4, and second, that no statutory authority existed to create a health care-related exemption for faxes, *id.* at *4. The FCC also rejected Kohll's argument that the First Amendment required the creation of such an exemption on the ground that the FCC had exempted health care calls to residential lines and certain calls made to cellular phones. *See id.* at *5. In rejecting Kohll's First Amendment challenge, the FCC noted, in dicta, that Kohll's fax would not qualify for either

such exemption in any case because it constituted an unsolicited advertisement. *See id.*

*Kohll's* does not support the conclusion that Rite Aid's calls do not qualify for the Health Care Rule. First, as the FCC noted in its decision, there is no health care exception for faxes under FCC regulations. *See id.* at *4. Second, the question in *Kohll's* was whether the faxes were purely informational or contained advertisements, *see id.* at *4, but as noted, *infra*, the Health Care Rule is an exception to the Telemarketing Rule, and thus may apply even where a message contains an advertisement, *see infra* IV.B.3. Third, the FCC's determination that *Kohll's* fax would not qualify for the FCC's broader exemptions from any consent requirement for calls to residential lines or cellular phones is not dispositive of the inquiry here: whether Rite Aid's call to Plaintiff qualifies for the Health Care Rule, which is merely an exemption from the prior express written consent requirement. *See id.* at *5.

Finally, even if this Court agreed that *Kohll's* final dicta were relevant, the Plaintiff's attempt to analogize the facts of this case to those in *Kohll's* is fatally flawed. Plaintiff, as noted, points out that both cases concerned the sending of generic advertisements for flu shots. Yet the faxes in *Kohll's* were sent to certain corporations alerting them to the availability of flu shots; they were not sent only to patients of the petitioner who had previously received prescriptions for flu vaccines. *See id.* at *3. In holding that Rite Aid's flu shot reminder calls conveyed health care mes-

material to whether the calls in this case were subject to HIPAA: the question to which Mohall responded asked only whether a telephone call would be subject to HIPAA if it "referenced the availability of a flu shot," but did not suggest that the hypothetical call was made only to individuals who had previously

received a prescription flu shot at Rite Aid, using a phone number they provided when they received their prescription. Mohall's testimony is immaterial to the actual question of whether HIPAA regulated the flu shot reminder calls here.

sages, the Court does not hold—or need to hold—that the fact that a call concerns the availability of a prescription medication alone makes it a health care message. In this case, unlike in *Kohll*'s, the calls were sent exclusively to patients of Rite Aid concerning the availability of a prescription medication for a specific medical problem for which they had previously sought care. *Kohll*'s is distinguishable.

The Court thus concludes that, because the undisputed facts establish that Rite Aid's calls were sent exclusively to patients of Rite Aid pharmacies who received a prescription flu shot the year before to alert them to the availability of such flu shots in the upcoming season, the calls qualified for the Health Care Rule as a matter of law. No reasonable jury could find the facts that the Defendant cites in opposition to be material or to otherwise counter this conclusion. *See City of Waterbury*, 542 F.3d at 35.

### 3. Evidence that Rite Aid HQ Sent the Call for a Marketing Purpose is Immaterial to Whether the Call Qualified for the Health Care Rule

Finally, Plaintiff, in arguing that the call in this case is subject to the Telemarketing Rule, cites various facts he claims establish that Rite Aid made the calls for a marketing purpose. *See* Pl. Opp. at 11. Plaintiff argues that the FCC's Health Care Rule "only ... exempt[s] calls that [do not] contain advertisements or solicitations." Pl. Opp. at 16. He thus asserts that, even if the calls did convey a health care message, the fact that they also, or primarily, were made for a marketing purpose would subject them to the Telemarketing Rule. Evidence of Rite Aid's marketing purpose in sending the flu shot reminder calls would thus create a material question of fact whether the Plaintiff can establish liability.

The Court disagrees. Because the text of the Health Care Rule makes clear that that rule serves as an exception to the Telemarketing Rule, it follows that, even if a call *also* has the characteristics of telemarketing or advertising, if it conveys a health care message it may be made with prior express consent. Because, as noted, Rite Aid's calls conveyed health care messages to their recipients, evidence that they were made for a marketing purpose does not alter the conclusion that they qualified for the Health Care Rule as a matter of law.

### a. The Text of the Regulation Makes Clear that the Health Care Rule Is an Exception to the Telemarketing Rule

First, the plain meaning of the regulation compels the above-stated conclusion. The Telemarketing Rule states that no person may "[i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, *other than* a call made with ... the prior express consent of the called party when the call ... delivers a 'health care' message ..." 47 C.F.R. § 64.1200(a)(2) (emphasis added). The use of the term "other than" makes clear that the Health Care Rule is an exception to the Telemarketing Rule. Thus, a call that would *otherwise* be telemarketing or advertising is subject to the Health Care Rule, and the lower consent requirement, if it conveys a health care message.

The structure and purpose of the rule confirms, and compels, this conclusion. In creating the Telemarketing Rule, the FCC left in place its prior express consent re-

quirement (as distinct from the prior express *written* consent requirement) for automated or prerecorded calls to wireless numbers that do not contain telemarketing or advertising. *See* 47 C.F.R. § 64.1200(a)(1); 2012 Order at 1832 ¶ 3 ("None of our actions change requirements for prerecorded messages that are non-telemarketing, informational calls .... Such calls continue to require some form of prior express consent under the TCPA ...."). Thus, under the Telemarketing Rule, an automated, prerecorded call to a cellular phone that does not contain telemarketing or advertisements is not subject to the prior express written consent requirement, but only to the prior express consent requirement. Similarly, a prerecorded call to a wireless number that qualifies for the Health Care Rule is not subject to the prior express written consent requirement, but only to the prior express consent requirement. If the Health Care Rule did not apply to calls that contain telemarketing or advertisements, it would be superfluous: its only function would be to except calls from the prior express written consent requirement that are *already* excepted from that requirement. *See Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (quoting *Market Co. v. Hoffman*, 101 U.S. 112, 115, 25 L.Ed. 782 (1879)). The single other district court to assess this question adopted the Defendant's position under precisely the same reasoning, and the Court finds that reasoning persuasive. *See Jackson*, 2016 WL 5907917, at *9 ("[I]t would have been odd for the FCC to create an *exception* to the general rule only for calls that contain no advertising or telemarketing, given that the *general rule* itself only applies to a call that 'includes or introduces an advertisement or constitutes telemarketing.'").

In short, the text and structure of the Health Care Rule make clear that the rule is an exception to the Telemarketing Rule. It follows that a call may *both* convey a health care message under the rule and contain telemarketing.

### b. Statements of the FCC Interpreting the Rule Do Not Require a Contrary Conclusion

 The Plaintiff makes no attempt to square his approach to the Health Care Rule with the text or structure of the regulation. *See generally* Pl. Opp. Instead, he cites to statements of the FCC he claims demonstrate that the FCC has interpreted the Health Care Rule to apply only if a message does not contain telemarketing or advertising. *See* Pl. Opp. at 16–18. Such statements do not alter this Court's conclusion.

 As initial matter, even if the FCC had interpreted the Health Care Rule as Plaintiff suggests, such interpretation would be inconsistent with the plain meaning of the regulation, and the Court would not defer to it. Under *Auer*, an agency's interpretation of its own regulation is not entitled to deference if inconsistent with the plain meaning of that regulation. *See Christensen*, 529 U.S. at 588, 120 S.Ct. 1655 ("The regulation in this case, however, is not ambiguous .... To defer to the agency's position [contrary to the plain meaning of the regulation] would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation."); *accord Nat. Res. Def. Council v. U.S. E.P.A.*, 808 F.3d 556, 579 n.17 (2d Cir. 2015); *Robinson Knife Mfg. Co. v. C.I.R.*, 600 F.3d 121, 134 n.11 (2d Cir. 2010). Further, a Court need not defer to an agency interpretation when other interpretations by the agency contradict it. *Id.* (declining to defer to an interpretation offered by an agency when evidence, in

other agency statements, contradicted that interpretation). As already noted, the text of the Health Care Rule makes clear that it is an exception to the Telemarketing Rule, and the FCC has interpreted the Health Care Rule as merely lowering the consent requirement for a robocall to a cellular number, and not eliminating any consent requirement. *See Consumer & Governmental Affairs Bureau, infra,* at 15267 n.7. Any FCC interpretation of the Health Care Rule as limited to calls that do not contain telemarketing or advertisements would thus be inconsistent with the plain meaning of the regulation and render the Health Care Rule superfluous.

In any event, the Court is not convinced that the FCC has interpreted the Health Care Rule as Plaintiff suggests. The Plaintiff cites to a 2012 statement of the FCC, made in the context of describing the health care message exemption for calls to residential lines. After acknowledging that, by statute, the FCC could not exempt calls made to residential lines that "include the transmission of any unsolicited advertisement," 47 U.S.C. § 227(b)(2)(B)(ii)(II), the FCC observed that "the calls at issue here are intended to communicate health care-related information rather than to offer property, goods, or services," and thus that "such calls are not unsolicited advertisements," 2012 Order at 1856 ¶ 63. Elaborating on this determination, the FCC stated, in a footnote, that "[b]ecause these health care-related calls' intent and purpose concern consumers' health, not the purchase of a good or service, as required by the definition of advertisement, we believe that these calls are not advertisements." *Id.* ¶ 63 n.195. This statement, viewed in the context of other statements by the FCC and the FTC, does not compel Plaintiff's position for several reasons.

First, although it is possible to read the FCC's statement as indicating that health care calls to residential lines may not contain advertising or telemarketing as defined under the TCPA and its implementing regulations, an alternative reading of that statement is also available: that if a call conveys a health care message it is *a fortiori* not an unsolicited advertisement, even if it is, as a functional matter, also intended to sell a product. Such an interpretation derives support from other statements by the FCC in its 2012 Order. In that Order, the FCC suggests that a call subject to the health care exemption for calls to residential lines, absent any exemption, could be construed to be an unsolicited advertisement. *See id.* at 1855 ¶ 62 & n. 187 (noting that "a prerecorded, health care-related call notifying a family that a student reaching the age of majority on a parental policy will lose coverage and then offering continuation coverage may be considered an unsolicited advertisement under the TCPA," even though the "communication is not considered 'marketing' under HIPAA and would be allowed"). The FCC also suggests that HIPAA restrictions on marketing calls, rather than its own, would govern health care messages. *See id.* ¶ 62 ("Among those opposing the exemption, one commenter states without elaboration that an exemption should not be established for health care-related prerecorded marketing calls. Although it is unclear from the comment, the commenter may not understand that restrictions *imposed by HIPAA* would restrain any such marketing calls." (emphasis added)). The statement Plaintiff cites thus need not indicate that, if a call contains "telemarketing" or "advertisements" as the FCC has defined those terms, it may not qualify for the health care message exemption for calls to residential lines.

Second, even if the Plaintiff is correct that the FCC has interpreted the health care exemption for calls to residential land lines to exclude telemarketing or advertisements, it does not follow that the same

restriction would apply to the Health Care Rule. The statutory limitation on its exemption authority that the FCC cited in its 2012 Order has no bearing on the Health Care Rule, which simply determines which of two consent standards, neither of which is required by the TCPA, governs. *See id.* at 1838 ¶ 21 (noting that the TCPA does not require any particular form of consent). Even if the FCC did determine that health care calls to residential lines cannot contain telemarketing or advertising, then, such a determination would not, and need not, control this Court's interpretation of the Health Care Rule.

Third, other statements of the FCC, outside of the 2012 order, suggest that calls that qualify for the Health Care Rule may contain telemarketing or advertising. The FCC's 2015 exemption for certain calls with "a healthcare treatment purpose" made to cellular phones was arguably narrower than its 2012 exemption for calls that need only convey "health care messages." 2015 Order at 8031 ¶¶ 146–47. Nevertheless, the FCC expressly included in the requirements for that exemption that "voice calls and text messages … *must not include any telemarketing, solicitation, or advertising.*" *Id.* at 8032 ¶ 147 (emphasis added). If the FCC understood a call with a healthcare treatment purpose to, *a fortiori*, exclude telemarketing or advertising (or to exclude any material that might, absent a health care purpose, constitute telemarketing or advertising) it is not clear why such an explicit restriction was necessary. In contrast, no such explicit restriction appears in the Health Care Rule. *See* 47 C.F.R. § 64.1200(a)(1).

Finally, even if the FCC's statements explicating the Health Care Rule are ambiguous, the FTC's are not. The FTC has stated that its health care rule "expressly *exempt*[s]" "calls that would *otherwise be prohibited*" under the Telemarketing Sales Rule from requirements of that rule. FTC

Guidance, *supra* (emphases added). To that end, the FTC has stated that "calls to describe a health-related product or service" are covered under its rule. *Id.* As noted, the FTC's health care exemption is textually indistinguishable from the FCC's, and the FCC modeled its own after the FTC's. 2012 Order at 1837 ¶ 18 (citing "the statutory goal of maximizing consistency with the FTC's telemarketing rules"). The FTC's understanding of its own rule is thus persuasive evidence of the FCC's understanding of the Health Care Rule at issue here, and corroborates this Court's conclusion that the Health Care Rule is an exception to the Telemarketing Rule.

In short, the clear text of the Health Care Rule suggests that, although a call might have the characteristics of telemarketing or advertising, if it nevertheless conveys a "health care" message as that term is defined under HIPAA, it is not subject to the prior express written consent rule. It follows that, even if the Plaintiff is right that Rite Aid's purpose in making the call at issue was to advertise its flu shots, that purpose is not material to the inquiry. *See City of Waterbury*, 542 F.3d at 35 (holding that, to be "material," a fact must be able to "affect the outcome of the suit *under the governing law*" (emphasis added) (internal quotation marks omitted)). Because the call conveyed a health care message, it was exempted from the Telemarketing Rule, and could be made with prior express consent.

## V. Conclusion

In conclusion, because the single call the Plaintiff received from Rite Aid was, as a matter of law, subject to the lower consent requirement of the Health Care Rule, and not the prior express written consent requirement of the Telemarketing Rule, and because it is undisputed that Rite Aid had the prior express consent of the Plaintiff

860

when it made the call, the Court GRANTS the Defendant's motion for summary judgment. The Court thus denies the Plaintiff's motion for class certification as moot. *See Flood v. Just Energy Mktg. Corp.*, No. 7:15-CV-2012 (KBF), 2017 WL 280820, at *7 (S.D.N.Y. Jan. 20, 2017) (denying a motion for class certification as moot after awarding summary judgment to the defendant); *accord Sudler v. Goord*, Nos. 08 Civ. 11389 (GBD) (AJP), 09 Civ. 6510 (GBD) (AJP), 2010 WL 4273277, at *17 (S.D.N.Y. Oct. 6, 2010), *report and recommendation adopted*, 2011 WL 691239 (S.D.N.Y. Feb. 23, 2011), *aff'd sub nom. Sudler v. City of N.Y.*, 689 F.3d 159 (2d Cir. 2012) (collecting cases).

In light of the pending sealing and redaction requests, the parties shall have one week from the date of this Opinion and Order to meet and confer and submit a joint letter proposing any redactions to the Opinion and Order, along with a justification for why such redactions are appropriate under this circuit's law. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). Although the Court will publicly docket an order announcing its bottom-line conclusions, it will refrain from publicly docketing this Opinion and Order until it has ruled on the proposed redactions. After doing so, the Court will rule on the underling sealing requests in due course.

This resolves Docket Nos. 78 and 87. The Court also grants both parties' requests for judicial notice, neither of which the other party opposes, *see* Dkt. Nos. 86, 100, and thereby also resolves docket numbers 86 and 100.

SO ORDERED.